Parker, C. J.
Three several questions are presented to us m this case, arising out of the several statutes, which have been cited; two of which come regularly before us in this action; and the third, respecting the claim by Hampshire against Hampden for reimbursement, arising incidentally, no opinion which we shall give can be enforced by judgment, as there is no action between those two counties before us.
The inhabitants of the county of Hampshire are the plaintiffs in the suit, claiming one third of the expenses of grand and traverse juries, for all the terms of the Supreme Judicial Court, from the time of passing the act of 1812, c. 124, to the time when a term of the said Court was established by law within the county of Frank lin. This they claim by virtue of the express provision of the third section of that statute. The defendant county has interposed its claim, which is to be considered as filed according to law, for a due proportion of the balance in the * treasury of [ * 84 ] Hampshire, arising from funds to which Franklin had contributed while a part of Hampshire, by virtue of the first section of the same statute. This claim of the defendants is resisted, on the ground that the provision of the statute, under which it is claimed, cannot have the force of law, or create any obligation upon the plaintiffs; because it is in the nature of a retrospective act, purporting to create a liability, where none existed before.
It certainly must be admitted that, by the principles of every free government, and of our constitution in particular, it is not in the power of the legislature to create a debt from one person to another, or from one corporation to another, without the consent, express or implied, of the party to be charged. If nothing was due from Hampshire to Franklin before the passing of the act, which requires the former to pay to the latter a proportion of money in the treasury belonging to Hampshire, it w;ould be evident, that such a requisi tian must have been made by the legislature through mistake; and it would not be within the constitutional power of any judicial Court to enforce- such an act.
But it is supposed that, in the act incorporating the county of Franklin, the legislature omitted, by accident, the provision, which was afterwards intended to be supplied by the statute of 1812, c. 124, which purports to be suppletory to the incorporating act; and ■his suggestion is rendered probable by the fact, that a similar provision *72 was introduced into the statute incorporating the county of Hamp den, which was enacted at the next session of the same Genera Court, which passed the act incorporating the county of Hampden. As both the new counties of Franklin and Hampden were taken from the county of Hampshire, and as no evidence exists of any circumstances, entitling Hampden to this apparently equitable provision, which did not apply, with equal force, to Franklin, it is not improbable that the legislature acted upon the belief that, through the inattention of those who represented the towns in the [ * 85 ] * county of Franklin, the omission to place that county upon the same footing with Hampden occurred;' and that it was just and reasonable to apply a remedy for the evil.
But there are difficulties in the way of enforcing this intended remedy, which we do not find it easy to overcome, without resorting to some other principles, than any which are discovered in the statute alone, or in the probable circumstances which induced the legislature to enact it.
For any thing apparent from the act itself, it may have been the intention of the legislature to pass it in the form in which it appears, and without making the provision afterwards thought to be reasonable. When a part of a county or town claims to be set off and erected into a new corporation, it does not necessarily follow, that it is equitable for it to carry with it any portion of the property which belongs to the body from which it separates. The expenses of maintaining a large and small institution are nearly the same; and it is frequently injurious to the members of the corporation, which is diminished for the convenience of some of its parts, that it should be cut up and divided, thus increasing the burdens of supporting it upon those who remain. Whether, when incorporating Franklin, the legislature was governed by this consideration, cannot now be ascertained; nor could it have been ascertained by a succeeding legislature. It may be that the provision in fa%oi of Hampden, in the act incorporating that county, was improvidently enacted, and that the omission to make a similar provision for Frank lin was deliberate and designed.
Had the same legislature which passed the incorporating act, at the same or perhaps at the next session, passed an additional act, ike that which their successors passed, the evidence of improvidence or mistake, in the incorporating act, might be considered as proved. But the legislature of the succeeding year could not judge of the motives and reasons, upon which their predecessors [ * 86 ] * had performed their legislative functions in this respect ; and, we apprehend, would predicate no act, affecting lights established by the former act, upon a supposed mistake of those *73 who had before them, at the time they acted, the means of judging what was fit and proper to be done.
We think, therefore, that the statute of 1812, ex vigore suo, had no operation as law ; because the object and effect of it was to require the county of Hampshire to pay out of its treasury, money which, by the preceding laws, belonged to that county, to the coun ty of Franklin; which latter county, before the passing of this statute, had no legal right to that money.
By general principles of law, as well as by judicial construction of statutes, if a part of the territory and inhabitants of a town are separated from it, by annexation to another, or by the erection of a new corporation, the remaining part of the town, or the former corporation, retains all its property, powers, rights and privileges, and remains subject to all its obligations and duties ; unless some express provision to the contrary should be made, by the act authorizing the separation (8).
The same principles will apply with equal force, when a county is divided. By the act, then, separating Franklin from Hampshire, all the property and credits remained to the latter county, as well as all the obligations and duties, which had accrued before the division. The additional act, then, deprived them of rights which had before become vested, and, for the reasons before stated, could not have any binding force.
But it is a just principle of the common law, and of sound reason, that parties, whose interests are attempted to be affected by the acts of others, which acts they have a right to oppose, may become bound by such acts, if they consent thereto; and especially if any thing is offered as a consideration, however inadequate, they accepting it as such, and having a fair view of the terms upon which it* is offered. This principle applies with [ * 87 ] peculiar force to legislative acts, as there is always a presumption in such cases, that the interests of all parties have been considered and duly attended to. Thus no man can be compelled by the legislature to become a member of a corporation without his consent; yet if he do consent, and even not expressly but by im plication, he cannot afterwards deny his liability to the lawful exac tians of the corporation, on the ground that he did not solicit the privilege, and was no party to it'when granted (9).
If, then, the inhabitants of the county of Hampshire may be legally considered as having assented to this act of- the legislature, which provides for the restitution to the county of Franklin, of so much money in the treasury as had been received from the towns com *74 posing the new county, after paying the debts due from the old county, then the present claim of Franklin may be maintained. And here it may be said that the equitable nature of that claim is strong enough to raise a presumption, that the inhabitants of Hampshire would, if the question was formally submitted to them, acquiesce in the demand made upon them. For the facts agreed show that they thought it just and right that the measure now claimed by Franklin should be meted to Hampden; between which counties there seems to be no discernible variance of circumstances. For the act incorporating Hampden must be presumed to have been assented to by Hampshire. We must, however, look for an actual assent, express or implied, and not rely upon the mere presumption that such an assent would be given.
How, then, are the inhabitants of a county to assent to any act, which is to bind them in their corporate capacity ? They are a corporation, so far as to be capable of suing and being sued ; but the inhabitants cannot, like the inhabitants of towns and ^parishes, assemble together and by vote declare their will upon any subject. The law has made no provisions for such meetings. But there must be some mode, in which their assent may be ex [ * 88 ] pressed; or * else, according to the principles of the constitution, no tax could be assessed upon the inhabitants for defraying expenses, which are by law imposed upon counties. For the inhabitants of counties, as such, are not represented in either branch of the legislature ; and so cannot, like towns,., which may be represented in both branches, or plantations which may be represented in the senate, be presumed to have assented to the taxes imposed by the legislature. There must then be some representative body in the county, whose acts and admissions must be considered as binding upon the inhabitants; and that body is, by our laws, the Court of Sessions, which has been immemorially considered as the agents and representatives of the county, in all matters touching its finances and general prudential concerns. This Court, although varying in its form, has always been composed of substantial inhabitants of the county, selected for their knowledge of its interests, and their ability to attend to its concerns.
It is the Court of Sessions only, which can authorize any suit in favor of the county, or provide for the defence of a suit. Iff upon a report of the commissioners, ascertaining the balance and proportion, an order had passed the Courts of Sessions of Hampshire and Hampden, to pay out of the respective county treasuries the sums due from each of those counties, such orders would have been conclusive, and must have been obeyed. If, during the pendency of this suit, a compromise had been made by the agents appointed *75 by the Courts of Sessions, that compromise would have been binding ; or if the agent, acting under instructions of the Sessions, had suffered a default, judgment would have been rendered. The Court of Sessions, then, is the representative body of the inhabitants of the county ; and their acts, in all matters falling within the scope of their authority, are binding upon the county; and with respect to demands upon the treasury, they have this authority.
* Now, the second section of the statute of 1812, c. 124, [ * 89 J provides that the Court of Sessions of each of the counties of Hampshire, Franklin, and Hampden should appoint one commissioner, with authority to adjust their equitable claims upon each other; and those Courts did, pursuant to that act, appoint such commissioners, who entered upon the duties of their office. This we consider as an assent of those Courts to the act, by which the several counties were bound ; especially when we advert to certain privileges, secured by the same act to the county of Hampshire, which might be deemed by the people of that county an equivalent for any liability they might incur, by the adoption of the provision in favor of Franklin.
By the act incorporating the county of Franklin, the Supreme Judicial Court was to be holden at Northampton in the county of Hampshire, until other provision should be made by law. Grand and traverse jurors were to be summoned from both these counties, and the expense was to be borne by Hampshire alone ; there being no provision to the contrary in the act.. At the time the statute of 1812, c. 124, passed, it was unknown how long this arrangement might continue. Possibly it might have continued long enough to absorb all the claim which Franklin had upon the treasury of Hampshire, or even to exceed that sum. We do not see that Hampshire would have had any legal claim upon Franklin for a share of these expenses; for the act was silent about them, and for aught which would appear, it was intended by the legislature, and agreed to by the parties, that the county of Hampshire should bear all this expense, in consideration of the inconveniences the inhabitants of Franklin would be subjected to, in attending the Court at such a distance from their homes; and the advantages which Hampshire might derive from being the judicial centre of the three counties.
The statute of 1812 provided, however, that this expense should thereafter be borne by the three counties. Possibly this provision would not have been made in favor * of Hamp- [ * 90 ] shire, but for the supposed equitable provision in" favor of Franklin. To reject one therefore, and adopt the other, would be highly inequitable. Both provisions ought to stand or fall together; as one was, without doubt, the consideration for the other.
*76 Further, the inhabitants of Hampshire must be considered as having adopted the act of 1812; for by their Court of Sessions they have appointed their agent to bring this action; which they can maintain only by virtue of the very statute, the operation of which .against themselves they resist.
Upori these principles, we are satisfied that the claim of Franlclin is made out; and judgment must be rendered for the sum due. deducting the amount of the demand in favor of Hampshire.

 4 Mass. Rep. 389.

 9 Mass. Rep. 269.