## Trustees of School District Number Three in Blandford *vs.* Franklin W. Gibbs.

An act of the legislature, in addition to a former act, creating a corporation for the management of a trust fund, was passed without the knowledge or request of the corporation, and was never adopted by any direct vote; but the corporation having elected certain officers provided for by the act in addition, and such officers having exercised the powers thereby conferred on them for nearly ten years ; it was held, that these proceedings were equivalent to, or sufficient evidence of, a formal assent and adoption by the corporation.

It is no objection to an election, that illegal votes were received, or legal votes ejected, unless the majority is thereby changed.

This was an action of replevin, argued at a former term by *R. A. Chapman*, for the plaintiffs, and *W. G. Bates*, for the defendant. The facts are fully stated in the opinion of the court.

Forbes, J. The parties have submitted this case to the decision of the court, upon an agreed statement of facts. It is a controversy in relation to the custody and management of certain trust property, the beneficial interest in which is admitted to be in the plaintiffs. The will of Jane Taggart, who died in 1807, contains the following bequest : —

Trustees of School District Number Three in Blandford *v.* Gibbs.

" In the seventh place, I will and bequeath that all the remainder of my estate, dues or demands, goods or chattels, of whatever name or nature, be collected and let out on interest, by my executors, and said interest to be applied yearly for the hiring suitable teachers for instructing of the scholars in the school district to which the farm on which I now live shall belong, to be laid out and expended at the public school-house in said district, by my executors, until said district shall be authorized, according to law, to receive the same into their own hands, and then the principal to be paid to such agent, or treasurer or treasurers, as said district shall direct, provided always, that the interest only is to be expended, and only for the use and benefit of said school, and according as above directed."

The action is replevin, and is brought to recover the book of records, and sundry notes and mortgages, being the fund, or a part thereof, created by the foregoing residuary devise.

In March, 1808, the legislature passed an act (St. 1807, *c.* 118) creating a board of trustees to receive, hold, and manage the legacy ; and invested them with all powers, incident to corporations, which were necessary or requisite for the purpose. By this act the trustees were authorized to choose a clerk and treasurer, to pass by-laws for certain purposes, and to fill vacancies as they should occur in the board of trustees, so as to create a perpetual succession, the right to which is expressly given by the act. It was, evidently, the intention of the legislature to create a board of trustees distinct from the inhabitants of the district, and it was made the duty of the trustees, annually, to lay before the inhabitants, in writing, an account of their proceedings and disbursements, and the state of the fund. The by-laws, passed by the trustees, pursuant to the act, were made binding upon the district, the only power reserved to which was that of giving directions relative to the application of the interest of the fund.

The records of the school district, which are before the court, show that the first meeting was held in November, 1808, professedly for the purpose of organizing the distric

into a corporate body, according to the act; but there was no vote accepting the act, and the records show that the district either mistook the meaning of the act, and the division of powers which it contained, or they intentionally disregarded it. After choosing a moderator, clerk, and treasurer, and three persons agents for the society, sundry by-laws were adopted, among which were the following: —

"Article 1. There shall be yearly chosen, in the month of April, by joint ballot of the major part of the male inhabitants of twenty-one years of age and upwards, present at the meeting of said district, one clerk, one treasurer, three agents and two assessors, whose power and trust shall be hereafter directed."

"Art. 3. The agents of the trustees shall have full power, at all times, and in all cases, to transact any business that the trustees of said society are authorized to do or transact in behalf of said society, except the choosing of the officers, as in the first article, or the making or altering any by-law of said society."

In pursuance of these by-laws, the inhabitants of the district acted as trustees of the fund. They chose the clerk, treasurer, and agents for the trustees, and appear to have exercised all the powers vested by the charter in the trustees, with the exception of filling vacancies; the records were kept in the name of the inhabitants of the district, and persons were repeatedly chosen to act as agents for the trustees, and to other offices, whose names are not to be found in the act of incorporation.

This practice continued until November, 1828, when the district undertook to elect a new board of trustees. This act was, apparently, distasteful to the surviving trustees named in the charter, and put them upon an inquiry as to their rights. At the next meeting, held on the 26th day of January, 1829, the style of the record is changed to "a legal meeting of the trustees of school fund in school district number three in the town of Blandford." At this meeting eleven new trustees were elected, by a majority of the surviving trustees named

4 *

in the act of incorporation, to fill the vacancies occasioned by death or removal; a vote was passed to repeal the by-laws of the "society," and the meeting was then dissolved. The proceedings of this meeting are certified by Abner Gibbs as clerk, who is presumed to have been one of the trustees named in the act; he was clerk of the preceding meeting, the record, however, does not show that he was elected clerk of the trustees, but it is agreed that the trustees were duly organized under the act of 1808. This and the three succeeding meetings were held at private dwelling-houses; the choice of agents for the trustees was discontinued, and until 1834, all the officers and agents of the trustees appear to have been selected from among the original trustees, or those who were elected in 1829 to fill vacancies.

In 1833, Lester E. Gibbs, then a member of the general court, and also a member of the board of trustees, procured the passage of the act of 1833, c. 90. This act was not passed at the request of the trustees, nor had they or the district notice that it was about to be passed. It is an act in addition to the act of 1808, and provides that all the persons who now are, or may hereafter become, resident freeholders within the limits of the district, as it was established at the time of the passage of the act of 1808, shall constitute the board of trustees, and that they shall be members of the board so long as they shall continue to be resident freeholders, and no longer. It further provides for the choice of a committee of three persons, who shall have power to call meetings of the trustees, and to perform any of the duties of the corporation, which the trustees, at any regular meeting, may authorize and empower them to perform.

The plaintiffs are trustees under the act of 1833; the defendant represents the trustees under the act of 1807, and he contends that the former act was never assented to or adopted by the trustees; and that without such assent or adoption, it is inoperative and void. The latter objection assumes, that the act of 1807 created a private eleemosynary corporation, which the legislature had no power, under the

Trustees of School District Number Three in Blandford v. Gibbs.

constitution, to modify, without the consent of the corpora-
tors. But whether or not the present case falls within the
principle of the decision in the case of *Dartmouth College*
v. *Woodward*, 4 Wheat. 518, we have not found necessary
to consider, as we think this case can be decided, in a
satisfactory manner, on other grounds.

It is true, that it does not appear, that the act of 1833 was
adopted by a direct vote of the trustees. Nor is that neces-
sary, as it is well settled that the acceptance of an act of
incorporation may be proved by satisfactory evidence other
than the record. *Middlesex Husbandmen & Manufac-
turers* v. *Davis*, 3 Met. 133 ; *Russell* v. *M'Lellan*, 14 Pick.
63. In the present case, the evidence that the trustees
and the district assented to the act of 1833, and acted upon
it, appears to the court to be satisfactory. At the first meet-
ing, which purports to be a meeting of the trustees, after
the latter act was passed, it was voted to choose a committee
of three to act as agents for the trustees, and this vote, the
plaintiffs contend, was passed in pursuance of the second
section of that act. The counsel for the defendant insists,
that no inference is to be made from this vote unfavorable to
his client, because it was the practice, for many years, to
choose three agents ; and this is true. The choice of these
agents was required by the by-laws, and the practice was
continued, with occasional interruptions, for twenty years or
more. But then, it is to be remembered, that the by-laws
were passed, and these agents were chosen, by the inhabitants
of the district, and not by the trustees ; and that from 1829
(when the trustees first assumed to act in that capacity, under
the statute of 1807, and when they annulled the by-laws
passed by the district) to 1834, that practice was discontinued.
We then find the practice revived at the meeting of the trus-
tees next after the passage of the act, and, in this connection,
the vote appears to us to have a tendency to prove, that the
trustees were acting under the act of 1833.

But the powers assumed by these agents, and acquiesced
in by the trustees and district for nearly ten years, are incon-

sistent with the idea that they were proceeding under the act of 1807.  By that act meetings were to be notified by the major part of the trustees, by posting an advertisement thereof in some public place in the district seven days, at least, before the time of the meeting.  The warrants for calling meetings in 1830, 1831, and 1832, are in the case, and they appear to have been signed by a majority of the trustees, in the manner pointed out by the original act; whereas the warrants from 1835 to 1838, inclusive, which are also in the case, are signed by the agents of the trustees, pursuant to the act of 1833. In the case first above cited, the court said, "By these authorities it is now well settled, whatever may have been the ancient doctrine as to corporations, that as the acts of private persons, even of the most solemn nature, may be presumed, or proved by presumptive evidence; so as to the acts of a corporation, if they cannot be reasonably accounted for but on the supposition of other acts done to make them legally operative and binding, they are presumptive proof of such other acts."

Now, in the present case, to make the acts of the agents, in calling meetings of the trustees, legally operative and binding, it is necessary to presume the acceptance of the act of 1833 ; and, considering the length of time which this practice was continued, the present case discloses as strong grounds for that presumption as did the case of *Hampshire* v. *Franklin*, 16 Mass. 76.   In that case, the appointment of a commissioner by the plaintiffs, who entered upon the duties of his office pursuant to an act of the legislature, was held to be an assent to the act; and it was further held by the court, that the appointment of an agent to bring the action, which action the plaintiffs could maintain only by virtue of the act in question, must be considered as an adoption of the act.

The act of 1833 was probably passed in reference to, and for the purpose of legalizing, a practice which had been adopted by the district, either through misapprehension or in disregard of the first act, and continued to 1829.   The prac-

Trustees of School District Number Three in Blandford *v.* Gibbs.

tice was convenient, and appears to conform to the intention of the testatrix.    By her will, the trust was to be managed by the executors " until said district shall be authorized according to law to receive the same into their own hands." It is not intended to say, that the first act was not a substantial compliance with the will, and justified by the powers which it vested in the district; but only that the testatrix does not appear to have contemplated the existence of a board of trustees distinct from the district.    However that may be, the court are satisfied, from the records and other evidence in the case, that the act of 1833 was assented to and adopted by the trustees and by the district; and, consequently, that the attempt of those persons, under whom the defendant justifies, to keep up a distinct organization, must fail.

It is agreed, that, at the annual meeting in 1844, John F. Collister, Lyman Gibbs, and William H. Gibbs voted in the choice of all the officers except the moderator, and it is objected, on the part of the defendant, that they were not legal voters, and that the proceedings at that meeting were therefore invalid.    Certain facts are stated, from which the defendant would infer the illegality of these votes; but in the manner in which the case is drawn up and presented to the court, that question does not properly arise.    It is not agreed that these votes changed the result of the ballot; and it is well settled, that it is not a valid objection to an election, that illegal votes were received, if they did not change the majority.    *First Parish in Sudbury* v. *Stearns*, 21 Pick. 148.    In the opinion of the court, the plaintiffs are entitled to judgment.