State ex rel. McCurdy vs. Tappan, Town Clerk, etc.

STATE ex rel. Mc CURDY vs. TAPPAN, Town Clerk, etc.

TAXATION — *For what purposes municipal corporations may be authorized — and for what purposes compelled to levy taxes. Constitutional law. Waiver.* Mandamus.

1. The legislature may *authorize* a town or other municipality to levy taxes therein for public purposes not strictly of a municipal character, but from which the public have received or will receive some direct advantage; or where the tax is to be expended in defraying the expenses of the government, or in promoting the peace, good order and welfare of society, or in paying claims founded upon natural justice and equity, or upon gratitude for public services or expenditures, or in discharging the obligations of charity and humanity.

2. The legislature has no power to *compel* a municipality to levy taxes for any of the purposes above mentioned, until the liability to pay the same has been adjudged by a court of competent jurisdiction. *Mills v. Charleton, ante,* p. 400.

3. The legislature cannot confer authority upon a municipality to tax itself for any other than a *public* purpose. As to what constitute public purposes, the decisions in *Curtis v. Whipple* (24 Wis., 350), and *Whiting v. R. R. Co.* (25 Wis., 167), approved.

4. Whether the legislature may compel a town or city to make a certain municipal improvement within its limits, or to pay for one already made, is not here decided.

5. Taxation to pay bounties to volunteers is not for a municipal purpose; neither is taxation to pay the costs and expenses of unsuccessful suits brought to enforce payment of any such bounty, whether against the town or individuals; and therefore the legislature has not power to compel a town to pay any such bounty or such costs and expenses; and ch. 260, P. & L. Laws of 1869, is invalid for that reason.

6. Said act, which undertakes to *compel* one town to levy a tax for the payment of a certain bounty and of the costs and expenses of certain unsuccessful suits therefor, while it does not impose a like obligation upon other towns, is in violation of sec. 1, art. VIII, of the state constitution, which requires that "the rule of taxation shall be uniform;" and also of sec. 23, art. IV, which requires that the system of town and county government shall be "as nearly uniform as practicable."

7. The *appearance* of a party before a court, judge or referee is not a waiver of any objection to the jurisdiction of such court, judge or referee over the *subject matter.*

8. Where a statute requiring the levy and collection of a tax is void, any ministerial officer whose duty it would otherwise be to perform acts in execution of the statute, may refuse to perform them; and *mandamus* will not lie against him to compel their performance.

APPEAL from the Circuit Court for *Winnebago* County.

On the 8th day of September, 1864, one Lyman F. Lent, a volunteer, was mustered into the military service of the United States, and was duly credited on the quota of Oshkosh, Winnebago county, but whether to the *town* or *city* of Oshkosh, does not very satisfactorily appear from his muster-in roll.

The relator, who was then treasurer of the city of Oshkosh, and was entrusted with the payment of bounty money for the same, believing that Lent was credited on the quota of the city, paid, on the order of Lent, three hundred dollars as bounty. This payment was made very soon after Lent was mustered. Within a few days after such payment was made, the relator, as he avers, ascertained that Lent was not credited to the *city*, but to the *town* of Oshkosh, which town had before that time voted to raise money to pay volunteers who should be mustered into such military service and credited on its quota. The relator thereupon procured from Lent an assignment of his claim for bounty against the town of Oshkosh. Neither the town or city has reimbursed to him the money thus paid to Lent.

The relator brought an action against the town of Oshkosh, and another against one George Rogers, who, when Lent volunteered, was chairman of the board of supervisors of that town, to recover the money paid by him to Lent. For some cause or causes, he failed to recover the same in either action, and was compelled to pay large sums of money for costs and expenses therein.

Such was the situation of affairs when the legislature attempted to relieve the relator, by the enactment of chap. 260, P. & L. Laws of 1869, entitled "an act for the relief of *Robert McCurdy*," and approved March 6, 1869.

Section one of that act is as follows: "It shall be the duty

of the judge of the tenth judicial circuit to hear and determine the amount of money paid out to one Lyman F. Lent, who enlisted to the credit of the town of Oshkosh, in the county of Winnebago, in the military service of the United States, by *Robert McCurdy*, as and for bounty for enlisting in such military service, and the amount of interest thereon from the time of such payment, at seven per cent. per annum up to the first day of December, 1869, also the costs and expenses incurred by said *Robert McCurdy* growing out of the non-payment to said *McCurdy* by said town of Oshkosh of the money paid by said *McCurdy* as aforesaid, to said Lent."

The act prescribes the place of hearing; the notice thereof required to be given, and the manner of service of such notice ; and directs that the award of the judge, when made and signed by him, be filed in the office of the clerk of the board of supervisors of Winnebago county, which officer was required to deliver a copy thereof to the town clerk of the town of Oshkosh. The act further made it the duty of such town clerk to add the amount of such award to the other taxes to be collected in that town, on the tax roll for the year 1869, and to apportion and carry out the same as a part of the taxes to be collected on the taxable property of said town for that year; and also required the town treasurer to collect the same and pay it over to the county treasurer, who was directed to pay the same to *McCurdy*. The act further provided that, if the amount of such award should, for any reason, fail to be apportioned and collected with the taxes for 1869, it might be so done in 1870, or in any year thereafter.

Pursuant to the foregoing enactment, a hearing was had before Hon. E. T. Sprague, then the judge of the tenth judicial circuit, who, by his award dated July 28th, 1870, found and determined that the sum paid by the relator to said Lent for bounty, the interest thereon for the time and at the rate specified in the act, and the costs and expenses incurred by the relator growing out of the non-payment thereof by the town to

him, amounted in all to the sum of nine hundred and thirty-seven dollars and seventy-six cents. Of this sum, $411.12 is for the bounty of $300, and the interest thereon; and the balance, being $526.54, is for the expenses incurred by the relator in the two actions before mentioned, but mainly in that against Rogers, and probably the interest thereon.

The provisions of the act relating to notice, filing the award and serving the same upon the town clerk, seem to have been complied with. The town clerk, when requested so to do, refused to carry out and apportion the amount of the award in the tax roll of the town of Oshkosh for the year 1870 ; and the relator applied to the circuit court for a writ of *mandamus* to compel the town clerk to obey the requirements of the act in that behalf. An alternative writ of *mandamus* was thereupon issued, directed to such town clerk, requiring him to levy the tax to pay the relator the amount of such award, or to show cause, etc., why he failed to levy the same. The writ is dated December 17th, 1870, and was made returnable on the 23d of the same month. Issue was taken by the defendant upon some of the averments contained in the petition of the relator, and a trial was had upon such issues in said court, which resulted in a verdict for the relator.

The court thereupon ordered and adjudged that a peremptory writ of *mandamus* issue to the defendant, the town clerk, to compel him to levy the amount of such award upon the taxable property of the town of Oshkosh pursuant to the provisions of the act of 1869.

The defendant appealed from such order and judgment.

*Gabe Bouck*, for appellant :

1. The act upon which this proceeding is based, (chap. 260, P. and L. Laws of 1869) is unconstitutional and void, the legislature having no power to compel taxation to pay a claim for which the town is not liable. The decision in the case of *Guilford v. Suprs. of Chenango Co.*, 18 Barb., 615, and 13 N. Y., 143, is not sustained by subsequent decisions. *Sweet v. Hul-*

*bert,* 51 Barb., 313; Sedgwick on Stat. and Con. Law, 414. The liability of the town must be first determined by a judicial tribunal,— by due process of law,—.by a jury. *People ex rel. Baldwin v. Haws,* 37 Barb., 440; 42 id., 549 ; 45 id., 359. The legislative power of taxation in this state is not absolute (*Whiting v. Sheboygan and Fond du Lac R. R. Co.,* 25 Wis., 167); and the adjudications in New York on the question of legislative power do not apply. This law creates a liability against the town without its consent. In that respect there is no difference between it and a private corporation or an individual. *Hasbrouck v. Milwaukee,* 13 Wis., 37, 47 ; *State ex rel. Board of Education v. Haben,* 22 id., 665. The resolutions adopted by the town in 1864 relative to payment of bounties to volunteers were void on their face, being adopted on motion without any election, and not being limited to the $200 authorized by law. The agreement to pay Lent $300, if made by the town, was void, and the legislature could not make it valid without the consent of the town. *Hampshire v. Franklin,* 16 Mass., 83. The legislature cannot impose a compulsory or even a voluntary tax, except for a *public* purpose. *Curtis v. Whipple,* 24 Wis., 350 ; *Brodhead v. Milwaukee,* 19 id., 624; *Soens v. Racine,* 10 id., 271, 281; Potter's Dwarris, 427 ; *Sharpless v. Mayor, etc.,* 21 Pa. St., 168 ; *Tyson v. School Directors,* 51 id, 9; *Grim v. Weissenberg School Dist.,* 57 id, 433 ; *Philadelphia Association v. Wood,* 39 id., 73. 2. Even if the legislature could impose this liability upon it, the town had the right to have the facts as to the amount paid to Lent and for costs and expenses determined by a jury. Cooley's Con. Lim., 351, 419; Potter's Dwarris, 468 ; *Haines v. Levin,* 51 Pa. St., 412. The determination thereof, was a judicial act, and, under sec. 2, art. VIII. of the constitution, leaving the same to the circuit judge to hear and determine, was invalid. 3. The payment by *McCurdy* was voluntary, and he could not recover it back. *Clancy v. McEnery,* 17 Wis., 177. 4. Part of the amount to be raised by the tax was costs incurred by the relator in private suits, and was there-

fore for a private purpose. 5. The evidence shows that the relator had not even an equitable claim, Lent having enlisted to the credit of the city and not of the town of Oshkosh, and not being needed to fill the town's quota. He never notified the town of his enlistment to its credit, and hence the town was not liable. *McCurdy v. Rogers*, 21 Wis., 197, 203. 6. The award was void for not specifying how much was awarded for bounty, and how much for costs and expenses. 7. The alternative writ was irregularly issued by the judge instead of the court. Moses on Mandamus, 202, 242; Crary's Pr., 286, 288; 2 Tiff. & Smith, 193; *Price v. Harned*, 1 Clark, (Iowa), 473. It was also irregular, in being made returnable in less than eight days. *The People v. The Judges, etc.*, 3 How. Pr., 164. 8. The act conferring power upon the judge to "hear and determine" the facts, provides for no appeal. The only remedy the town had was a common-law writ of *certiorari*. Such a writ was pending when the alternative *mandamus* issued, and under it the court had power to examine into the validity of the proceedings, and it was, therefore, error to allow this writ. *People v. Board of Police*, 39 N. Y., 506; *People v. Assessors of Albany*, 40 id., 154; 2 Tidd's Pr., 1134; 21 Burr. Pr., 193; 2 Tiff. & Smith, 230; 15 Wend., 198; 9 id., 433. The record is all removed thereby and all proceedings stayed. 2 Burr. Pr. 196; *Conover v. Devlin*, 26 Barb., 429. 9. If the relator has any claims against the town, they are solely the creation of the legislature, and can be taken away by it. The right to a particular remedy is not a vested right. Cooley's Con. Lim., 361, 362, and cases cited. By chap. 143, Laws of 1871, the clerk is absolutely prohibited from doing what this writ proposes to compel him to do. 10. The act of 1869 is judicial, not legislative.

*Jackson & Halsey*, for respondent: 1. The act of 1869, under which these proceedings were instituted, is not an encroachment upon the judicial powers of the government. It does not attempt to revise or modify any judgment of any court. It recognizes that the relator has an equitable claim against the

town, which is sufficient to support a tax, and refers it to the judiciary for adjustment. 2. The town appeared before the judge, and went to trial without demanding a jury. Municipal corporations, being mere creatures of the legislature, have no constitutional guaranty of trial by jury. 52 Pa. St., 374–414. 3. It is wholly immaterial to the validity of the law that it does not submit the question of taxation to the voters. *Knowlton v. Sups. of Rock Co.*, 9 Wis., 410. The state may permit or it may command taxes to be levied. *Blanding v. Burr*, 13 Cal., 351; *Watertown v. Cady*, 20 Wis., 501; *Borough of Dunmore's Appeal*, 52 Pa. St., 374, 474; *People v. Power*, 25 Ill., 187; *Layton v. New Orleans*, 12 L. An., 515; *People v. Mitchell*, 45 Barb., 208; *Thompson v. Lee County*, 3 Wallace, 327; 12 Ill., 1; *Booth v. Woodbury*, 32 Conn., 118, 129. 4. The town acquiesced in the act of the legislature by appearing before the judge by its attorney, with witnesses and evidence, and taking part in the hearing. It thereby subjected itself to the provisions of the act. *Knight v. Barnes*, 25 Wis., 352. 5. The act is copied from one passed in New York in 1852, which has been sustained by the courts of that state. *Town of Guilford v. Board of Sup'rs*, 13 N. Y., 143, affirming 18 Barb., 615; *People v. Mayor of Brooklyn*, 4 N. Y., 419; *Thomas v. Leland*, 24 Wend., 65; *Shaw v. Dennis*, 5 Gilman, 415. 6. The duties of town and county officers respecting levying and collecting taxes and paying bounties are duties to the state, and not to the town or city. *Lorillard v. Town of Monroe* 11 N. Y., 392; 3 How. (U. S.), 550. The money paid by the relator was therefore paid for the public, and being paid by mistake, the sovereign power can relieve him and place the burden upon that portion of the state to which it justly belongs. *State of Maryland v. Balt. and Ohio R. R. Co.*, 3 How. (U. S.), 550. The legislature is the sole judge as to what is the proper burden belonging to the respective political divisions of the state. Potter's Dwarris, 420; *People v. Draper*, 15 N. Y., 543; 12 La. An., 515; *Greighton v Board of Sup'rs*, Chicago Legal News, Dec. 9, 1871. 7. If in

any case the legislature could exercise the taxing power for the purpose of removing a burden, unjustly placed upon a public officer by the refusal of a town to pay a bounty equitably due from it, the court is bound to presume, in this case, that the necessary facts existed to give the legislature jurisdiction and render the act valid. *Norwich v. Commissioners of Hampshire*, 13 Pick., 60; *Brayton v. Merriam*, 6 Wis., 14; *Smith v. Mariner*, 5 id., 551; 30 Conn., 149, 159. To render the act invalid, a total *want* of power to legislate on the subject must be shown. 19 Wis., 662–3. The constitution of this state is not a grant, but a limitation of the powers of the legislature, and it is competent for that body to exercise *all* legislative power not prohibited thereby. *Bushnell v. Beloit*, 10 Wis., 195. To warrant the court in declaring this act unconstitutional, it should be able to point out the particular part of the constitution violated. *Chandler v. Mann*, 16 Wis., 398; *Tyler v. The People*, 8 Mich., 320. 8. The town clerk cannot on his own motion refuse to insert the amount of the award in the tax roll. *People ex rel. v. Collins*, 7 Johns., 549; *People v. Dean*, 3 Wend., 438; *Morris v. The People*, 3 Denio, 381. 9. Chapter 143, Laws of 1871, cannot have any effect upon the rights and duties of the town clerk in this case, because it did not become a law until after these proceedings were instituted. The relator had vested rights in the award, which could not be affected by subsequent legislation. Smith's Com. on Stat. and Con. Law; *State ex rel. Knox v. Hundhausen*, 23 Wis., 508; 15 id., 21; *Gilmore v. Shuter*, 2 Shower, 16; *S. C.*, 2 Mod., 310; Jones, 108; 2 Ld. Raym., 1,352; *Holden v. James*, 11 Mass., 396; *Lewis v. Webb*, 3 Greenl., 336; *Dash v. Van Kleeck*, 7 Johns., 477; *Lewis v. Brackenridge*, 1 Black., 220; *Prop. Ken. Purchase v. Laboree*, 2 Greenl., 275; *Wilkinson v. Leland*, 2 Pet., 627; *Satterlee v. Matthewson*, id., 380.

The distinction between the obligation and remedy, by the late decisions is rendered inoperative. 2 Parsons on Con. (3d ed.), 703, note and cases there cited. *Bronson v. Kinzie*, 1 How.

(U. S.), 311; *McCracken v. Hayward*, 2 id., 608; *Green v. Biddle*, 8 Wheat., 1, 75.

LYON, J. Whether the act of 1869 is, or is not a valid exercise of legislative power, under the constitution, is obviously the controlling question in this action. In view of its great importance we have given it the most deliberate and careful consideration. We are called upon to lay down the principles upon which the legislative power may constitutionally be employed to impose local municipal burdens in exceptional cases and for extraordinary purposes, and to define the limits of that power. While we may not shrink from this delicate and important duty, we shall endeavor to perform it with caution and with due regard to those rules of law which have been wisely ordained to prevent improper judicial interference with the legitimate powers of the legislature.

That the legislature may confer upon cities, towns and villages power to raise money by taxation to pay bounties to those who, in time of war, shall enlist in the military service of the United States, has been settled by repeated decisions of this court and of the courts of other states. It was so held upon the grounds that claims for public services, or expenditures founded in equity and justice, in gratitude or charity, will support a tax, which is voluntarily imposed upon a municipality by a majority of the citizens thereof, or by the consent of the municipality, evidenced in some other manner. *Brodhead v. The City of Milwaukee*, 19 Wis., 624. No person has the hardihood to deny that the men who enlisted during our late war to serve in the ranks, (and these alone were entitled to bounties,) became thereby entitled to the gratitude of the nation; and because of this, and because, also, it was a matter of great public concern that the ranks of our armies should be constantly replenished by recruits from the walks of civil life, it was held that the legislature might authorize the various cities, towns and villages of the state to tax themselves respectively,

to a limited extent, to promote the public welfare, and at the same time to recognize these obligations of gratitude. This they were authorized to do by raising money by taxation, with which to pay those persons who had been, or who might be mustered into the military service of the United States and credited upon the quota of the municipality imposing such tax. The general law of the state limited such bounties to two hundred dollars for each volunteer so mustered and credited, and did not make the payment of any bounty obligatory upon the municipality. The legislature left it entirely to the discretion of a majority of the legal voters of the city, village or town, to raise money by taxation for that purpose, or not, as such majority thought proper.

The furnishing of soldiers for the armies of the United States is not, in any correct sense, one of the municipal functions of a city or town, and taxation to pay bounties to volunteers who enter such service is not, therefore, taxation for a municipal purpose. While it is true that every citizen, and particularly every tax payer, had, during the late war, a direct interest in having the Union armies seasonably replenished and increased, with the least practicable disturbance to the social relations and business interests of the people, and while the system of raising troops by offering inducements to men to volunteer rather than by resorting to drafts, was best calculated to secure those results, yet, during such war, military service was an individual, and not a municipal, obligation to the general government. It was enforced by the direct action of the government upon individuals. Although, for convenience, the local municipal subdivisions of the state were used to limit and designate the districts in which the government officers should operate in enforcing that obligation, no duty or obligation of the town, city, or ward, *as such* was ever asserted. For instance, the government did not say to a town that it must furnish a given number of men for the military service, but it said to all of the citizens of a town who were, by the laws of the United

States, liable thereto, that of their number a certain proportion must, either in person or by substitution of some kind, render such service. It does not change the nature of the obligation nor extend its operation, that the state zealously and efficiently co-operated with the general government to procure volunteers and recruits for the army. The obligation was still upon the individual and not upon the municipality *as such.*

Having thus ascertained the nature and extent of the obligation to render military service to the government of the United States, and the principles upon which cities and towns were allowed, if they chose to do so, to raise money by taxation to pay bounties to volunteers in such service, we are the better prepared to consider the authorities upon which the learned counsel for the plaintiff rely to sustain the validity of the act of 1869, upon which this action is predicated.

It is an important fact that, in most of the cases thus relied upon, where the power of arbitrarily imposing a local tax has been exercised by the legislature and upheld by the courts, the purposes for which the taxes were imposed were strictly municipal in their character, such as opening and working highways, grading and paving streets, building bridges, keeping these in repair and the like, and many of the cases sustain the power on the express ground that the tax was imposed for legitimate municipal purposes. An extended statement of these cases will accomplish no useful purpose. Reference will be made to such of them as are believed to verify the foregoing suggestions. Those which do not, if any such be found, may be the subject of comment before closing the consideration of this case.

*Thomas v. Leland,* 24 Wen., 65; *People v. Mitchell,* 45 Barb. S. C., 208 ; *Norwich v. Comrs. of Hampshire,* 13 Pick., 60 ; *Shaw v. Dennis,* 5 Gilman, 405 ; *Blanding v. Bun,* 13 Cal., 343 ; *Layton v. The City of New Orleans,* 12 La., An., 515 ; *The People ex rel. McLean v. Flagg,* 11 Am. Law Reg., 80, (Feb. M. 1872); *Creighton v. Supervisors of San Francisco,* 4 Ch. Legal News, 58.

That these were all the cases of taxation for legitimate municipal purposes we do not by any means concede, but such were the grounds of the decisions.

It is true that, in some of these cases, the language of the courts may be sufficiently broad to sustain the validity of the act of 1869, but it is believed that none of those decisions go to that extent. In some of the cases cited on behalf of the plaintiff, it was left optional with the municipality to levy the tax. In *Booth v. Woodbury*, 32 Conn., 118, the option was given to the voters of the town to ratify a previous illegal tax to raise money to pay bounties. *Weister v. Hade*, 52 Penn. St. R., 474, is a similar case, except that the authority was conferred upon the administrative officers of the township in which the tax was levied. *Shaw v. Dennis*, 5 Gilman, 405, before cited, is a case where a tax was directed by law to be levied to pay for a bridge previously erected, but the county authorities had an option to apply the money when raised, to that purpose, or not, as they might think proper, and stress was laid on that fact in the opinion by Mr. Justice CATON.

The case of *The Town of Guilford v. The Board of Supervisors of Chenango Co.*, 13 N. Y., 143 ; 18 Barb. S. C., 615 ; is probably the strongest one cited in support of the validity of the act of 1869, and requires a more particular notice. A turnpike company had taken possession of a highway and bridge in the town of Guilford, without having the damages appraised and paying the same as the law required. In 1836 the town meeting of that town directed the highway commissioners of the town to prosecute the turnpike company therefor. They did so, bringing their action under the advice of counsel, but mistook their remedy, were ultimately defeated, and compelled to pay a large amount of costs. They presented their claim to be re-imbursed for their costs and expenses in the action to the auditing board of the town, and the board refused to audit the same. They then sued the town therefor, and after a long and expensive litigation were defeated in the court of Errors. In 1851 the legis-

lature passed an act, by which it was submitted to the electors of the town to determine what amount of compensation, if any, should be allowed the commissioners for their costs on account of such litigation.    Under that act, the electors at the next annual town meeting decided against the claim.    The legislature of 1852 thereupon passed another act, requiring the county judge of Chenango county to appoint three commissioners to hear and determine the amount of costs and expenses incurred by the highway commissioners on account of the litigation with the turnpike company, and by reason of the non-payment thereof by the town, and, when so determined, the act directed the amount thereof to be levied upon the taxable property of the town, and paid over to the parties entitled thereto.    The award was made, and the town brought the action to enjoin the collection of the tax to pay the same, on the ground that the act of 1852 was unconstitutional and void.    The supreme court and the court of Appeals held that the act was a valid and constitutional law, and binding upon the town.

Another notable case in the same state is that of *Brewster v. The City of Syracuse*, 19 N. Y., 116, which holds that the legislature has power to authorize the levy of a tax for the purpose of paying to one who has constructed a municipal improvement, an addition to the contract price, which the corporation was forbidden to pay, by its charter.    Although the legislation in this case was permissive and not mandatory, yet, in view of the reasoning in that and other cases, and of the decision in *The Town of Guilford v. The Board of Supervisors, etc., supra,* there can be little doubt but that the law would have been upheld had it absolutely directed the tax to be levied, collected and paid over to the contractors.

The principles of the decisions of the courts of New York on the subject of the power of the legislature to impose taxes, is thus stated by Judge MASON in *People ex rel. Crowell v. Lawrence*, 41 N. Y., 141: "The settled principles to be deduced from these cases are, that the sovereign power of taxation is

State ex rel. McCurdy vs. Tappan, Town Clerk, etc.

lodged in the legislature; that the power of taxing, and the power of apportioning taxation, are identical and inseperable; that there is no constitutional restraint upon the exercise of this power; that the right of determining what portions of the public burdens, by way of taxation, shall be borne by any individuals or class of individuals, must be determined by the legislature; that however much this power may be abused by the legislature, the only check upon it is the responsibility of the legislative power to its constituents."

Of course, in that state, the law of 1869 would be held a valid and binding exercise of the taxing power.

Cases have been cited in that state which, it is claimed, hold the opposite doctrine, but, if there are any such, they are exceptional, if not accidental, and we have not taken time to examine them. The authoritative language of Judge MASON above quoted, uttered as recently as 1869, is conclusive of the principles which govern the courts of that state in dealing with the question of the legislative powers of taxation, and demonstrates that all the cases are decided upon the grounds that the power of the legislature over the subject of taxation is not restricted in any manner by the constitution.

That power is restricted by the constitution of this state, and this seems to be the proper connection in which to consider the provisions of that instrument bearing upon the subject. Art. VIII, §1, ordains that "The rule of taxation shall be uniform." By art. IV, § 23, it is provided that "The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable." Art. VII, § 2, ordains that "The judicial power of the state shall be vested in a supreme court, circuit courts, courts of probate, and in justices of the peace." The constitution of the state of New York seems to contain none of these provisions.

We think that no extended argument is necessary to show that the act of 1869, which singles out the town of Oshkosh from all of the towns in the state, and compels it without its

consent to raise money by taxation for purposes not municipal in their character, and for which no other town or municipality in the state has ever been arbitrarily compelled to tax its citizens, entirely disregards the constitutional mandate that taxes must be imposed by a uniform rule.   Where is the uniformity in requiring that town to pay, not only the full amount of a disputed claim against it and interest thereon, but all the expenses of the relator in unsuccessful litigation to recover it in the courts, when such claim does not arise out of any municipal obligation of the town, and when no such requirement is imposed upon any other town or upon any city or village in the state?   It seems to us that, to sustain this act as a valid exercise of legislative power, would be to break down and destroy a most wise and salutary constitutional restriction upon the power of taxation.   This we may not do.   The constitution contains no more valuable guaranty of the rights of property than is contained in the provision under consideration, and, to destroy it or impair its force by judicial construction, would be an outrage upon individual rights, which cannot be too severely reprobated.

Again, we should be greatly at a loss to know how to frame an argument to show that the act of 1869 is not also a plain violation of that constitutional provision which guarantees one system of town and county government throughout the state, to be as nearly uniform as practicable.   Were we to hold this act valid, it would not surprise us if we should fail to convince the tax payers of the town of Oshkosh, upon whom it imposes a burden which the tax payers of no other town in the state have been compelled to bear, that the uniformity in the system of town government, guaranteed by the constitution, had not been violated.   We are strongly inclined to the opinion that one of the purposes sought to be accomplished by this limitation upon the legislative power was to protect the tax payers in any particular county or town from being compelled by the legislature without their consent to bear burdens in respect to matters not

strictly municipal, which other counties or towns are not required to bear. But it is not deemed necessary to make any extended remarks upon the question here suggested.

As bearing upon both of the constitutional restrictions above mentioned, let us take one or two illustrations. Suppose that, for the purpose of inducing the general government to erect a building in that city for a court house and post office, and other federal offices, the legal voters of the city of Oskhosh had all assembled, and a majority of them, not having legal power to do so, had voted that the city would pay one-half the cost of such building. Then suppose that, after the same has been erected, the legislature should enact a law requiring the proper city officer to levy, in the next annual tax roll of the city, a sum sufficient to pay one-half of such cost, without the further consent of the electors or of the constituted authorities of the city. Or suppose under a similar state of facts, the legislature should direct a tax to be raised in the county of Winnebago, to pay for erecting the hospital for the insane now in progress of erection in that county, or should direct a tax to be levied on the taxable property in Dane county to pay for building the state capitol. What would be said of such legislation? It would be said, and truly, that those are not municipal purposes, that although they are public in their character, and beneficial to the localities respectively where located, and although the legislature might lawfully confer upon such city or counties the power, if they chose to do so, to tax themselves for the purposes indicated, yet that it had no power to *compel* them to raise money by taxation for those purposes. To hold otherwise, would be to disregard the constitutional restrictions upon the power of taxation, and to leave each town or city of the state, or rather each tax payer therein, at the mercy of the legislature. We do not believe that the framers of the constitution, or the people who adopted it, intended any such result, but rather, that taxation should be imposed in accordance with uniform rules, and upon principles that should make its burdens equal;

and that the taxing power should not be exercised in exceptional local cases, and especially for purposes not of a municipal character, as in this case, without the consent of the town or city proposed to be taxed, expressed by a vote of the electors thereof, or given by its regularly constituted authorities.

It is strongly urged by counsel for the relator that there is a moral obligation, or one founded in principles of natural equity, upon the town of Oshkosh to pay this claim, and that this fact gives the legislature power to compel the town to pay it. But such, we think, is not the law. In the cases above supposed, by way of illustration, the unauthorized acts of the city or counties in agreeing to pay for the court house, hospital or capitol, would create a strong moral obligation to do so after the same had been erected, but, clearly, that obligation does not extend the power of the legislature. The constitutional limitations before mentioned, would still be operative and binding, and would necessarily exclude the legislature from sitting in judgment upon the town and deciding that the obligation exists. The existence of such obligation, however, may have an influence upon the validity of a law, enacted in a proper case, which authorizes the municipality to discharge the same, and it has been held to have an influence in determining whether the municipality has ratified the unauthorized acts after the power to do so has been conferred upon it. In such case, it has been held that slight evidence of ratification is sufficient. *County of Hampshire v. County of Franklin*, 16 Mass., 76; *Hasbrouck v. Milwaukee*, 13 Wis., 37. But we have seen no case, except in the courts of New York, which holds that such moral obligation gives the legislature power to compel payment. After legal ratification, the claim rests in contract and may be enforced in the courts, and there is no occasion for legislative interference.

The effect of holding that the act of 1869 is a valid law, will be to hold that the legislature may by law make a contract for the town of Oshkosh without its consent, which shall be bind-

ing upon it. This must be so, for the reason that no claim, other than those arising out of the exercise of, or the failure to exercise, its proper municipal functions, can be enforced against a town, unless such town has contracted to pay the same. If the legislature may do this, it may make contracts for individuals, without their consent, which shall be binding upon them, for in respect to contracts, and the rights and obligations resulting therefrom, an individual and a town or any municipal corporation stand on precisely the same ground. Clearly, the legislature has no such power.

In *Hampshire v. Franklin*, cited above, Chief Justice PARKER says; "It certainly must be admitted that, by the principles of every free government, and of our constitution in particular, it is not in the power of the legislature to create a debt from one person to another, or from one corporation to another, without the consent, express or implied, of the party to be charged. If nothing was due from *Hampshire* to *Franklin* before the passing of the act, which requires the former to pay the latter a proportion of money in the treasury belonging to *Hampshire*, it would be evident that such a requisition must have been made by the *legislature* through mistake; and it would not be within the constitutional power of any judicial court to enforce such an act." (P. 84). It will be observed that this was a contest between the two counties. The court held that nothing was due from *Hampshire* to *Franklin* when the act was passed, the payment of which could be legally enforced. But because the representative authorities of *Hampshire* had done that which amounted to a ratification of the act, and because it was just that Hampshire should pay, that county was held liable. The language of the learned Chief Justice is just as applicable under our constitution, as under that of Massachusetts.

*Atkins v. The Town of Randolph*, 31 Vt., 226, is directly in point upon many of the questions involved in the case. Omitting a statement of the facts of that case, some of the remarks of Judge BARRETT, who delivered the opinion, are so applica-

ble here, that I feel myself justified in quoting therefrom at some length.

The learned judge, after quoting the above language of Chief Justice PARKER, or rather the first sentence thereof, and also a remark of Mr. Justice BRONSON, in *Taylor v. Porter*, 4 Hill, 143, to the effect that the power to make bargains for individuals has not been delegated to any branch of the government, proceeds as follows: " This doctrine must receive, as it ever has received, the same application to a municipal corporation as to a private corporation, or to an individual, when it is sought to visit a liability *ex contractu* upon a town, by the ordinary means of a suit at law.

" It is true, as was urged in the argument by the learned counsel for the plaintiff, that in some respects the legislature have a power in respect to municipal corporations, that they have not in respect to private corporations or individuals. They may alter or abolish municipal corporations at pleasure, but yet not so as to defeat the pecuniary rights of individuals against such corporations, or as depending on their existence. The legislature have the same power in respect to private corporations, when that power is reserved in the law creating them. So far as a municipal corporation is endowed by law with the power of contracting, and as such, is made capable of acquiring, holding and disposing of property, and subject to the liabilities incident to the exercise of such power and capacity, thus being invested with legal rights as to property and contracts, and made subject to legal liabilities in respect thereto, to be ascertained and enforced by suits in the ordinary judicial forums, upon the same principles and by the same means as in the case of a private corporation, it must stand on the same ground of exemption from legislative control and interference as a private corporation. As to third persons who seek to enforce pecuniary liabilities against towns, arising upon contract, such towns are merely private corporations or individuals, and in this respect they are not affected by the purely

municipal, public and political features that appertain to their corporate existence, in virtue of, and in reference to which alone, they are subject to the absolute control of the legislature," (p. 237.)

The judge sustains his views by references to many of the adjudged cases, and he has doubtless given us a correct statement of the law. Those views dispose of the argument based upon the assumption that a municipal corporation is subject to the unrestricted control of the legislature.

Without commenting further on the cases which hold the same general doctrine as those before cited, I will content myself with a reference to a very few of them. *People ex rel. McCagg v. Mayor, etc.*, 51 Ill., 17; *Bowdoinham v. Richmond*, 6 Greenl., 112; *Brunswick v. Litchfield*, 2 id., 28. In *Hasbrouck v. The City of Milwaukee, supra*, will be found a discussion of some of the principles herein discussed, and that case sustains many of the views above expressed in respect to the powers of the legislature to impose burdens, arbitrarily, upon towns and cities without their consent, and for purposes outside of their proper municipal functions.

The case of *Wahlschlager v. The Town of Liberty*, 23 Wis., 362, is in point. The town of Liberty had voted to pay bounties to drafted men when there was no law authorizing it to do so. The plaintiff was drafted from that town. Afterwards the legislature attempted to legalize the proceedings of the town in that behalf, by an act passed for that purpose, and directed therein that a tax should be levied in such town to pay the bounties thus illegally voted. The plaintiff, having been drafted from that town, and being entitled to a bounty therefrom, according to the provisions of such act, brought the action to recover the same. Although this court held that he had mistaken his remedy, and if entitled to a bounty, that he should have instituted proceedings to compel the levy and collection of the tax, yet the Chief Justice, in the opinion delivered by him, says of the law upon which the action was predicated,

"We shall enter into no argument to show that if there was no obligation on the part of the town before the passage of the act, the legislature could not, without the concurrence of the inhabitants or proper authorities of the town, originate one upon which an action at law as upon a promise may be maintained as against the town. This is an elementary principle in the law of this country."

That no unwarrantable inference may be made from the views herein advanced, it is deemed proper to remark, that the power of the legislature to confer authority upon municipal corporations to impose taxes for purposes not strictly municipal, is not by any means unrestricted. The cases in which that power may be constitutionally exercised, and the principles upon which it is based, have already been referred to. Unless the purpose for which the taxes are imposed is of the character indicated, the power does not exist. Such have been the uniform decisions of this court. *Curtis v. Whipple*, 24 Wis., 350; *Whiting v. The Sheboygan and Fond du Lac R. R. Co.*, 25 id., 167. The same doctrine has been recognized in many other cases which it is unnecessary to cite. Neither is it to be inferred that we intend to question the power of the legislature to make appropriations of money directly from the state treasury for any purpose not expressly prohibited by the constitution.

We now proceed to consider the effect of the other constitutional provision before mentioned upon the act of 1869. The town of Oshkosh has steadily and constantly denied its liability to pay any part of the claim of the relator. The power to decide whether the town is under any legal obligation to pay the same or any portion thereof is vested by the constitution exclusively in the courts. The constitutional provision in that behalf, by necessary implication excludes the legislative or executive branches of the state government from the exercise of judicial powers. These powers must be exercised by the courts alone, and any act which by its terms confers them upon any officer or person or other tribunal, is absolutely void.

The effect of the act of 1869 is to adjudicate that the town of Oshkosh is indebted to the relator for the bounty paid by him to Lent, the interest thereon, and all of the expenses incurred by the relator in his unsuccessful attempts to collect the same of Rogers and of the town, by actions. In principle, the act is the same as though it had expressly and in terms *adjudged* that the town is so indebted, and, because the exact amount of such debt was unknown, appointed Judge Sprague a referee or arbitrator, to take proofs and ascertain and award the amount thereof. This was, at most, a mere assessment of damages. That the officer appointed to make the award was a judicial officer is of no importance. The act did not submit the question of the primary liability of the town, but assumes that such liability existed. Neither did it submit the question of the amount of such assumed indebtedness to any *court*, so that the town could avail itself of the right of jury trial, of the right of appeal from the award, and of other rights incident to actions in courts. The proceeding was a compulsory arbitration, in which the town was foreclosed by the act from denying the validity of the relator's claim against it, and, if the act is a valid exercise of legislative power, the award could only be impeached for failure by the arbitrator to proceed in accordance with the requirements of the law, or for fraud or mistake. It seems very clear, therefore, that, by passing the act of 1869, the legislature attempted to exercise judicial powers, and hence, were there no other objection thereto the act would, for that reason, be invalid.

But it is insisted that the fact that the town appeared before Judge Sprague by its attorney and contested the amount of the award, is a ratification and acceptance of the law, and binds the town to pay the award. The act under which the award was made being void there was no submission, and Judge Sprague had no jurisdiction of the subject matter of the proceedings. The distinction between jurisdiction of the *person* and of the *subject matter*, is well settled. In the former case, a

general appearance confers jurisdiction, in the latter it does not. It was so held by this court at the present term in *Damp v. The Town of Dane. ante* p. 419. Had the act of 1869 been a valid law, such appearance would doubtless estop the town from asserting that due notice of the hearing was not given, but no further.

The only remaining point argued by counsel for the relator, which requires particular notice is that, conceding the act of 1869 to be void, still the town clerk, who is a mere ministerial officer, had no power to pass upon its validity, and that it was his duty to levy the tax to pay the award unless restrained at the suit of some person competent to raise the question of validity. We do not think this position tenable. The act being void, it binds no one, and any person may assert its true character and refuse to obey it. Besides, there can be no doubt that the tax payers of the town could have maintained an action to enjoin the levy of the tax, and the town clerk, by refusing to levy the same, acted, in a certain sense, as their representative. The cases cited to sustain this position fail to do so. They only hold that a mere ministerial officer cannot be permitted to assert that a public officer *de facto* is not also an officer *de jure*. That is simply an application of the familiar rule that the right of a person in the actual exercise of a public office, to such office, shall not be questioned collaterally, but only in a direct proceeding instituted for the purpose of determining such right. The cases last mentioned are *The People v. Collins*, 7 John., 549; *The People v. Dean*, 3 Wen., 438; *Morris v. The People*, 3 Denio, 381.

It may be further observed that the town clerk cannot properly levy a tax without authority of law, and after holding that there is no authority of law for levying this particular tax, it would seem illogical to hold that it is still the duty of the town clerk to levy the same. We close the discussion of the main question under consideration with the general remark, that we agree with the learned counsel for the relator when they insist

that our state constitution is not a grant of power to, but a limitation of the powers of, the legislature; and, inasmuch as we are satisfied that the act of 1869 is a clear violation of certain express provisions of the constitution, we are not required to pass upon the vexed question, which has frequently been decided both ways by different courts. whether an act of the legislature should be held void, without regard to constitutional limitations, when it is contrary to natural justice or contravenes the fundamental principles of free government. Tested by the rule that no act should be held invalid unless the court can place its finger upon the constitutional limitation which it clearly violates, and still the act of 1869 must be held to be unconstitutional and void.

Other questions were discussed in the argument, some of them being mere questions of practice, but, inasmuch as we have reached the conclusion that there is no valid basis for these proceedings, it becomes unnecessary to consider them.

After most careful consideration, we are of the opinion that it must be resolved as follows:

1. The legislature may *authorize* a town or other municipality to levy taxes therein for public purposes not strictly of a municipal character, but from which the public have received or will receive some direct advantage; or where the tax is to be expended in defraying the expenses of the government or in promoting the peace, good order and welfare of society; or where it is to be expended to pay claims, founded in natural justice and equity, or in gratitude for public services or expenditures, or to discharge the obligations of charity and humanity from which no person or corporation is exempt.

2. The legislature has no power to *compel* a municipality to levy taxes for any of the foregoing purposes until the liability to pay the same has been adjudged by a court of competent jurisdiction. See *Mills v. Charleton*, decided at the present term, *ante*, p. 400.

3. The legislature cannot confer a valid authority upon a

municipality to tax itself for any purpose which is not, within the decisions of this court above referred to, a public purpose.

4. Whether the legislature may compel a town or city to make a certain municipal improvement within its limits, or to pay for one already made, is not here decided.

5. Taxation to pay bounties to volunteers, is not for a municipal purpose, neither is taxation to pay the costs and expenses of unsuccessful suits brought to enforce payment of any such bounty, whether against the town or individuals; and therefore the legislature has not power to compel the town of Oshkosh to pay any such bounty or such costs and expenses.

*By the Court.*— The order of the circuit court, awarding a peremptory writ of *mandamus*, is reversed, and the cause remanded with directions to that court to discharge the alternative writ of *mandamus* issued herein to the defendant.