## STATE v. C. H. HOLM AND ANOTHER.[1]

January 25, 1918.

No. 20,771.

**Army and navy — circulating seditious pamphlets — violation of statute.**

1. Circulating a pamphlet which impugns the motives of the President and Congress in entering into the war, and seeks by unfounded assertions to incite antagonism to the war, the natural tendency of which is to deter enlistments, is a violation of chapter 463 of the Laws of 1917.

**Same — no conflict with Espionage law.**

2. Chapter 463 of the Laws of 1917, making it a criminal offense to advocate that men should not enlist in the military forces or aid in prosecuting the war does not infringe the constitutional provision conferring upon Congress the power to raise armies, nor the constitutional provision preserving freedom of speech and of the press, and is not abrogated or superseded by the act of Congress of June 15, 1917, known as the Espionage law.

C. H. Holm and Frank Holm were indicted by the grand jury of Ramsey county for the crime of interfering with and discouraging the enlistment of men in the military or naval forces of the United States or of Minnesota. They demurred to the indictment and their demurrer was overruled by Haupt, J., who at their request certified to the supreme court the questions enumerated after the second paragraph of the opinion. Affirmed.

*Lyndon A. Smith,* Attorney General, *Ambrose Tighe,* Special Assistant Attorney General, and *R. D. O'Brien,* County Attorney, for plaintiff.

The pamphlet attacks the constitutionality of the conscription law and declares that the war was entered on through improper motives, without justification and against the popular will, that it is not worthy of popular support and that refusal to register is a patriotic duty. In general the men drafted through the so-called conscription law and those entering the

[1] Reported in 166 N. W. 181.

service otherwise are all recognized as having enlisted, as soon as they take the oath required. Sheffield v. Otis, 107 Mass. 282. As used in the conscription law, enlistment means joining the army under any of the methods provided for the purpose, whether through the procedure provided for compulsory draft or by voluntary act. It is not necessary to constitute an offense under the act, even if it applies to voluntary enlistment only, that the pamphlet should, in express terms refer to voluntary enlistment as such, or should in express terms advise against it. It is sufficient if its contemplated purpose or reasonable effect is to dissuade men from so joining the army. Masses Pub. Co. v. Patten (C. C. A.) 245 Fed. 102.

The Minnesota act has nothing to do with the raising of armies or with rules and regulations for the government of armies raised or to be raised. It is simply a local police measure, aimed to suppress a species of seditious speech and literature which the legislature has found objectionable. If the legislature has otherwise power to forbid such talk and the circulation of such literature, the fact that it has some possible contributory effect on the Federal function of raising armies, is quite beside the question. The act does not assume to say whether armies shall be raised or how they shall be raised, or what shall be done with them if raised. What it says is that in Minnesota people shall not by word or writing discourage national or state military service. If the act is unconstitutional, it must be on some other ground than that it contravenes anything in article 1 of the Federal Constitution.

Nothing is better settled in American law than that the same act may be an offense against the dignity of several sovereignties and punishable as such by each of them. The same act may be a violation of a state statute and also a violation of a municipal ordinance on the same subject, or the violation of a state statute and also a violation of a Federal statute on the same subject. It is not admitted that the provisions of the Espionage Act are identical with those of chapter 463, Laws 1917, but if they were, the state government's legislation would not be superseded by the act of Congress. Moore v. People, 14 How. 13, 14 L. ed. 306; State v. Oleson, 26 Minn. 507; Ex parte Siebold, 100 U. S. 371, 25 L. ed. 717; U. S. v. Palan (C. C.) 167 Fed. 991; Cross v. North Carolina, 132 U. S. 131, 10 Sup. Ct. 47, 33 L. ed. 287.

There are two theories about the constitutional guaranties of freedom of speech and liberty of the press. One theory is that they simply forbid laws in the nature of a censorship, which require submission of speech, in advance of utterance, or printed matter, in advence of publication, to some constituted authority for approval, but that the state, while forbidden to require previous approval, is at liberty nonetheless to enact statutes which prescribe a subsequent punishment for speech or publications inimical to the public welfare. Under this theory, a man can say or write what he pleases, but may be punished, if he says or writes something which the legislature has forbidden. The other theory is that the constitutional guaranties permit a man to say or write what he pleases, both without preliminary censorship or license, and also with impunity.

But the overwhelming weight of authority, as well as the express language of the Minnesota constitutional provision, sustains the first view. Const. (Minn.) art. 1, § 3; Rex v. St. Asaph (a) 3 Term Rep. 428; 2 Black, Comm. 1326; State v. Pioneer Press Co. 100 Minn. 173-176.

The second theory is elaborated in 70 Cent. Law Journal, 184-201.

*Hermon W. Phillips,* for defendants.

The act is repugnant to Const. (U. S.) art. 1, § 8, and Amend. 14, § 1; Const. (Minn.) art. 1, § 3, and art. 4, § 27.

The gist of the offense, whether directed against the nation or state, is the advocating of nonenlistment. Enlistment is, in its inception, a contract, and the act of making this contract of entering the army, is a purely voluntary act on the part of the person entering the service of the government as a soldier. Nonenlistment is not an offense; the failure to advocate enlistment is not an offense and advocating nonenlistment is not an offense.

The national government, having the sole power to raise and support armies, and to make all needful rules in relation thereto, it is beyond the power of the state to add to or take from such provisions as Congress has enacted, indeed it is beyond the power of the state to act in the matter at all whether Congress has acted or not. Houston v. Moore, 5 Wheat. 1, 21, 22, 5 L. ed. 19; Tarble's Case, 13 Wall. 397, 20 L. ed. 597.

The citizen of the United States has a "privilege," the exercise of which this act penalizes, and this privilege is his right to discuss publicly or privately, orally or in writing, the policies of the national government re-

garding enlistment, or any other plan or system it may be proposed to adopt, or the government should adopt, for the raising of its army or navy. Crandall v. Nevada, 6 Wall. 35, 36, 18 L. ed. 745; Twining v. New Jersey, 211 U. S. 78, 29 Sup. Ct. 14, 53 L. ed. 97; Slaughter House Cases, 16 Wall. 36, 21 L. ed. 395.

The Espionage Act was approved June 15, 1917, 40 St. 231, [See U. S. Comp. St. Temp. Supp. 453], twelve days after the commission of the offense charged by the indictment. Concerning the enlistment problem nothing is of sufficient importance for the national government to concern itself with unless the act shall be done "wilfully" and shall "obstruct," and shall be "to the injury of the service or of the United States," and this only when the government is at war. The Espionage Act supersedes, and nullifies for all purposes, the various enactments of all the states on the same subject matter, even if such enactments could otherwise be of force.

Sole and exclusive power to legislate on the matters now under consideration is vested in Congress. Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. ed. 128; Peirce v. New Hampshire, 5 How. 554, 12 L. ed. 279.

The act is not a police regulation. Holden v. Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. ed. 780.

TAYLOR, C.

Chapter 463, p. 764, of the laws of the state of Minnesota, approved April 20, 1917, provides: "It shall be unlawful from and after the passage of this act for any person to print, publish or circulate in any manner whatsoever any book, pamphlet or written or printed matter that advocates or attempts to advocate that men should not enlist in the military or naval forces of the United States or the state of Minnesota." Section 1. "It shall be unlawful for any person to teach or advocate by any written or printed matter whatsoever, or by oral speech, that the citizens of this state should not aid or assist the United States in prosecuting or carrying on war with the public enemies of the United States." Section 3.

The defendants were indicted upon the charge that they had violated this statute by circulating a pamphlet which is set forth in full in the

indictment. They demurred to the indictment. The trial court over-ruled the demurrer, and then, at their request, certified four questions to this court which may be summarized as follows:

1. Whether the facts stated in the indictment constitute a public offense?

2. Whether the statute conflicts with section 8 of article 1 of the Federal Constitution?

3. Whether the statute conflicts with section 1 of the Fourteenth amendment to the Federal Constitution?

4. Whether the act of Congress of June 15, 1917,[1] the so-called Espionage Law supersedes, suspends or annuls the state statute?

The pamphlet is, in the main, an attack upon the act of Congress of May 18, 1917, commonly known as the Selective Draft law; but it does not stop with an attack upon that law. It asserts, among other things, that "this war was arbitrarily declared against the will of the people;" that the people are ten to one against it; that "the President and Congress have forced this war upon the United States;" that now "they are attempting by military conscription to force us to fight a war to which we are opposed;" that "the integrity of the country is being menaced;" that "this war was declared to protect the investments;" and that "Wall street is the bonds of the Allies." It then asks: "Why should the entire population be called upon to suffer and die because a few individuals have invested their surplus wealth unwisely? Are you ready to give your life to save their dollars?"

Defendants contend that the term "enlist" as used in the state statute refers only to voluntary enlistments, and that the statute is not violated by an attempt to deter men from complying with the conscription law; while the state contends that the term "enlist" as used in the statute is broad enough to include enlistments under the conscription law as well as voluntary enlistments, and that the statute is violated by an attempt to deter men from complying with the conscription law as well as by an attempt to deter them from enlisting voluntarily. It is not necessary to determine this question in this case for the pamphlet does not confine itself to opposing the means adopted for raising troops, but impugns the motives which induced the President and Congress to enter into the

[1] 40 St. 219, c. 30, title I, § 3.

war, and attempts by unfounded and unwarranted assertions to incite op-
position to the war and to create a feeling that we have been brought
into it for mercenary and unworthy purposes. It manifests not mere-
ly opposition to conscription, but opposition to the war and to carrying
on the war in any manner. Without saying in so many words "that men
should not enlist," the whole tenor of the article is calculated to incite
opposition to the war and to deter men from enlisting or otherwise aiding
in carrying it on. To violate the statute it is not necessary that the
pamphlet circulated should directly and expressly urge men to refrain
from enlisting, but the statute is violated, if the natural and reasonable
effect of the pamphlet circulated is to deter men from doing so. Masses
Pub. Co. v. Patten (C. C. A.) 245 Fed. 102; U. S. v. Pierce (D. C.) 245
Fed. 878. We think that such is the effect of the pamphlet in question,
and the contention of defendants that, although the pamphlet opposes
compliance with the conscription law, it does not oppose voluntary enlist-
ment, and for that reason does not transgress the statute, cannot be sus-
tained.

Defendants also contend in effect that as section 8 of article 1 of the
Federal Constitution confers upon Congress the power to declare war
and raise armies and to make all laws which shall be necessary and
proper for carrying into effect the powers so conferred, it is beyond the
power of the state to prohibit its citizens from hindering or interfering
with the raising of such armies; that laws to accomplish that purpose can
be enacted only by Congress.

These constitutional provisions and the laws of Congress passed pur-
suant thereto were under consideration in Presser v. Illinois, 116 U. S.
252, 6 Sup. Ct. 580, 29 L. ed. 615, and in Houston v. Moore, 5 Wheat.
(18 U. S.) 1, 5 L. ed. 1. In the Presser case it was held that a law of
the state of Illinois prohibiting any body of men, other than the militia
of the state and the troops of the United States, from drilling or parad-
ing with arms without a license from the Governor did not infringe either
the Federal Constitution or the Federal laws as it did not interfere with
the organization, arming and drilling of the militia as provided by the
Federal laws. In the Houston case, a statute of the state of Pennsylvania
providing that a member of the militia of that state, who was called
into the service of the United States and who refused to obey such call,

should be tried by a state court-martial, and be liable to the penalties prescribed by the act of Congress, was held valid as the delinquent had not actually entered the Federal service and the Federal jurisdiction had not become exclusive. It is clear from these and numerous other Federal decisions that state statutes do not offend against the constitutional provisions cited, unless they trench upon the power of the national government to raise troops, or interfere with or hinder the operation of the Federal laws governing such matters. The statute here in question does neither; it merely prohibits advocating, within this state, that men should not enlist and should not aid in prosecuting the war against the public enemies. In enacting it as a police regulation, the legislature was well within its province.

Neither do we think that the so-called Espionage law of June 15, 1917, passed by Congress, abrogates or supersedes this statute. The citizens of the state are also citizens of the United States and owe a duty both to the state and to the United States. The state is a part of the nation and owes a duty to the nation to support, in full measure, the efforts of the national government to secure the safety and protect the rights of its citizens and to preserve, maintain and enforce the sovereign rights of the nation against the public enemies, and to that end the state may require its citizens to refrain from any act which will interfere with or impede the national government in effectively prosecuting the war against such public enemies. It is the duty of all citizens of the state to aid the state in performing its duties as a part of the nation, and the fact that such citizens are also citizens of the United States and owe a direct duty to the nation does not absolve them from their duty to the state nor preclude the state from enforcing such duty. Halter v. Nebraska, 205 U. S. 34, 27 Sup. Ct. 419, 51 L. ed. 696, 10 Ann. Cas. 525.

True the state cannot make or enforce requirements which are inconsistent with those of the national government, for those of the national government are paramount in case of conflict. But here there is no conflict between the state statute and the Federal law, and both may subsist and be given effect. Presser v. Illinois, 116 U. S. 252, 6 Sup. Ct. 580, 29 L. ed. 615. "Every citizen of the United States is also a citizen of a state or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of

139 M.—18

either. The same act may be an offense or transgression of the laws of both." Moore v. Illinois, 14 How. (55 U. S.) 13, 20, 14 L. ed. 306, 309. "Where a person owes a duty to two sovereigns, he is amenable to both for its performance; and either may call him to account." Ex parte Siebold, 100 U. S. 371, 389, 25 L. ed. 717. See also Fox v. Ohio, 5 How. (46 U. S.) 410, 12 L. ed. 213; U. S. v. Marigold, 9 How. (50 U. S.) 560, 13 L. ed. 257; Cross v. North Carolina, 132 U. S. 131, 33 L. ed. 287; In re Green, 134 U. S. 377, 10 Sup. Ct. 586, 33 L. ed. 951; Davis v. Beason, 133 U. S. 333, 10 Sup. Ct. 299, 33 L. ed. 637; Crossley v. California, 168 U. S. 640, 18 Sup. Ct. 242, 42 L. ed. 610; Grafton v. U. S. 206 U. S. 333, 27 Sup. Ct. 749, 51 L. ed. 1084, 11 Ann. Cas. 640; Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, 47 L. ed. 108; State v. Oleson, 26 Minn. 507, 5 N. W. 959; State v. Lee, 29 Minn. 445, 13 N. W. 913.

The state statute prohibits citizens of the state from discouraging enlistment in either the state or national military forces and from advocating that citizens of the state should not aid in carrying on the war. The act of Congress provides: "Whoever, when the United States is at war, shall wilfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies and whoever, when the United States is at war, shall wilfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty, in the military or naval forces of the United States, or shall wilfully obstruct the recruiting or enlistment service of the United States, to the injury of the service or of the United States, shall be punished by a fine of not more than $10,000 or imprisonment for not more than twenty years, or both." [See U. S. Comp. St. 1917 Supp. § 10212c, p. 453.]

Defendants recognize and call attention to the wide difference between these laws. The one is designed to enforce a duty which the citizen of the state owes to the state; the other to enforce a duty which the citizen of the United States owes to the United States. There are many acts which may violate one but not the other of these laws, and there are also many acts which may violate both, but the state statute is not necessarily invalid for that reason. There is nothing in the statute which is inconsistent with the Federal law, nor which in any manner inter-

feres with, hinders or delays the operation of that law. The state has control of its internal affairs, and in the exercise of its police power may prescribe rules of conduct for its citizens, and may forbid whatever is inimical to the public interests, or contrary to the public policy of the state. 6 R. C. L. p. 191, § 190. That the state is inhibited from exerting its police power to obstruct the operations of the national government, or to regulate matters controlled and regulated by the national government, does not mean that in time of war it may not make the national purposes its own purposes to the extent of exerting its police power to prevent its own citizens from obstructing the accomplishment of such purposes.

. Defendants also contend that the statute abridges the freedom of speech and of the press secured to citizens of the United States by the first section of the Fourteenth Amendment to the Federal Constitution. To what extent this amendment takes from the states the power to place legislative restrictions upon the freedom of speech and the freedom of the press is still a mooted question; but conceding that it protects this right from abridgment by the states, the freedom secured thereby is not an unlimited license to speak and to publish whatever one may choose. It is settled that the state may prohibit publications or teachings which are injurious to society, or which tend to subvert or imperil the government or to impede or hinder it in the performance of its public and governmental duties without infringing the constitutional provisions which preserve freedom of speech and of the press. These constitutional provisions preserve the right to speak and to publish without previously submitting for official approval the matter to be spoken or published, but do not grant immunity to those who abuse this privilege, nor prevent the state from making it a penal offense to publish or advocate matters or measures inimical to the public welfare. State v. Pioneer Press Co. 100 Minn. 173, 110 N. W. 867, 9 L. R. A. (N. S.) 480, 117 Am. St. 684, 10 Ann. Cas. 351; Patterson v. Colorado, 205 U. S. 454, 27 Sup. Ct. 556, 51 L. ed. 879, 10 Ann. Cas. 689; U. S. v. Pierce (D. C.) 245 Fed. 878; People v. Most, 171 N. Y. 423, 64 N. E. 175, 58 L. R. A. 509; Respublica v. Dennie, 4 Yeats (Pa.) 267, 2 Am. Dec. 402; 2 Story, Const. (5th ed.) § 1880.

The United States is at war and we think the legislature did not ex-

139 MINNESOTA REPORTS

ceed its power in making it a criminal offense to advocate that men should not enlist in the military forces or aid in prosecuting the war.

The first question is answered in the affirmative and each of the others in the negative; and the case will be remanded for further proceedings in the trial court.