STATE EX REL. ATWOOD VS. JOHNSON and others.

[Soldiers' Cash Bonus.]

*November 8—November 17, 1919.*

*Soldiers' cash bonus: Powers of state and federal governments: Powers granted and reserved: Delegation of legislative power: Depriving secretary of state of constitutional duty: Military power of state: Concurrent jurisdiction of federal and state governments: Conflicting state and federal laws: Special legislation: Equal protection of laws: Courts: Wisdom of legislation not a question for courts: Practical construction of constitution: Statutes: Vote of people to make statute effective: Taxation: Public purpose: Soldiers' bonus act as amendment of income tax law: Uniformity: Progressive taxation: Classification and exemptions: Discrimination: Inequality of burden: Corporations and individuals: Surtax: Right of offset: Foreign corporations: Allocation of income tax: Secretary of state as auditor.*

1. Money appropriated under the Soldiers' Bonus Law (ch. 667, Laws 1919) and awarded to persons who served in the armed forces of the United States, and who at the time of their induction into that service were residents of Wisconsin, is for a public purpose, the services benefiting the state as well as the nation; and the exercise of the taxing power of the state in raising money to be given as an appreciation of the patriotic services rendered is justified. The assertion of power for a long period of time by similar legislative enactments and continued custom amounting to practical construction of constitutional provisions, while perhaps not controlling, is entitled to great weight on the question of public purpose.

2. The federal government having only delegated powers, and powers not granted to it expressly or by necessary implication being reserved to the states respectively, or to the people, by art. X of the federal constitution, and the state of Wisconsin having reserved to itself a certain military policy not inconsistent with that granted to the federal government by the federal constitution, the United States and the state have a concurrent right to legislate in respect to a subject matter not exclusively granted to Congress. The power of Congress to raise and support armies and to provide a navy does not preclude the Wisconsin legislature from enacting the soldiers' bonus law, which does not burden, interfere, or conflict with any federal legislation.

3. The taxing scheme embodied in the act is constitutional:

  (a) The three-mill tax, being a general tax on all property for a public purpose, is not open to the objection of inequality of burden, special legislation, or want of equal protection of the law.

  (b) The surtax provision is in effect an amendment to the income tax law, and under the law relating to income taxation, if the classification be proper and the exemptions reasonable, it is valid, the uniformity clause of the constitution having no application to the income tax. Since the classification is in conformity to the law, as there is no discrimination within a class and the exemptions in each class apply to every member of the class, it is no objection that the exemptions in one class are different from those in another.

  (c) The fact that the surtax was levied upon 1918 incomes only, and the real-estate tax upon the assessment of 1919 only, did not constitute such incomes or assessment a class. They were merely the resources of the next tax levy upon which the additional tax required by the act was laid.

  (d) It is proper classification to put corporations in one class and individuals in another, as there is a substantial difference in the situation—a corporation being an artificial creature of the state endowed with advantages which an individual does not possess; and the fact that the surtax of the individual begins with the fourth thousand of taxable income, while that of the corporation begins with the first thousand, does not make the exemptions arbitrary or whimsical.

  (e) The fact that the general law provides that income taxpayers are entitled as an offset to the extent of the personal property tax paid and that the soldiers' bonus act denies the offset against a surtax, does not make the present act discriminatory or a denial of due process. *Income Tax Cases,* 148 Wis. 456, followed.

  (f) Sec. 7 of the act is in effect an amendment to the income tax law; and in determining the basis upon which the six per cent. deduction allowed to corporations is to be computed, the capital stock, surplus, and undivided profits must be allocated on the same basis as the allocation of the income tax is to be made; and as the provision thus construed treats all corporations alike, there is no discrimination in favor of or against foreign corporations.

  (g) The right granted to county boards to elect to issue bonds does not delegate to the county the legislative power to levy the mill tax, the legislature having levied the tax and the provision relating to the issue of bonds being an administrative detail regarding payment.

220    SUPREME COURT OF WISCONSIN.    [Nov.

State ex rel. Atwood v. Johnson, 170 Wis. 218.

4. The duties conferred upon the service recognition board by the act are purely ministerial, and, the legislature having laid down a rule of law respecting its duties and vesting it with the determination of the facts, it is not a delegation of the taxing power of the legislature.

5. Although the law gives the service recognition board charge and control of the general scheme of payments and authorizes that body to adopt rules for the distribution of the fund, the ascertainment and selection of the beneficiaries, and the determination of the amounts to which they are entitled, it does not violate sec. 2, art. VI, of the state constitution, as it is incumbent upon the secretary of state to audit and pass upon all matters of which under the constitution he is *ex officio* auditor.

6. The provision for submission to the people of the question whether the tax shall be levied does not render the act unconstitutional, it being within the power of the legislature to make the taking effect of the law dependent on a vote of the people.

THIS ACTION was originally brought in this court to test the constitutionality of ch. 667, Laws 1919, known as the Soldiers' Bonus Act, and, if found unconstitutional, to restrain the enforcement of the act.

The attorney general declined to commence the action, and upon application the court granted leave to the relator here to institute the action in the name and behalf of the state.

The defendants are charged with the administration and enforcement of the act.

The complaint is as follows:

"Now comes the plaintiff in the above entitled cause, pursuant to leave of said honorable court, and for a complaint against the above-named defendants respectfully shows to the court:

"I.

"At its last session the legislature of the state adopted an act which is numbered and known as chapter 667, Laws of 1919. The act was approved on July 30, 1919, and at a special election held on September 2, 1919, a majority of the electors of the state voted in the affirmative upon the question embraced in section 9 of the act.

"Pursuant to section 1 of the act, the governor of the state has appointed *W. F. Lorenz* as one of the members of the service recognition board, which board has been organized pursuant to the act, and consists of *Emanuel L. Philipp,* governor, *Orlando Holway,* adjutant general, and *W. F. Lorenz.*

"Substantial doubt and controversy has arisen as to the validity of said act and as to the right of the service recognition board, the tax commission of Wisconsin (now *Nils P. Haugen, Thomas E. Lyons,* and *Carroll Atwood*), the secretary of state (now *Merlin Hull*), and the state treasurer (now *Henry Johnson*) to estimate, determine, assess, or collect the taxes provided for by the act, to certify or audit for payment or make any payments thereunder, or otherwise to proceed with the administration or execution of the act.

## "II.

"Plaintiff is advised and believes that the act is subject to the following, among other, infirmities affecting its constitutionality, and that by reason thereof it is not a valid law:

"1. The act provides for the assessment and collection of taxes, and the expenditure of the funds thereby collected for other than the estimated expenses of the state, and for purposes which are not public, thereby violating the provisions of sections 2 and 5 of article VIII of the Wisconsin constitution and of the Fourteenth amendment to the federal constitution, and transcending the limitation, inherent in constitutional taxation, that taxes may only be levied and collected for public purposes.

"2. The act violates the provision of section 3 of article VIII of the constitution, which inhibits the giving or loaning of the credit of the state in aid of any individual.

"3. The act provides for extraordinary expenditures, not within the purview of the expenses which the legislature is, by section 5 of article VIII of the constitution, authorized to provide for by current taxation.

"4. The act provides for the payment, from moneys raised by taxation, of what is designated by the legislature as a 'bonus' to Wisconsin soldiers, sailors, marines, and nurses who served in the armed forces of the United States. Such

forces were the forces of the United States and not of the state. The Congress of the United States, pursuant to the exclusive power vested in it by section 8 of article I of the federal constitution, has by numerous laws made provision for compensating its armed forces during their service, for allotments to their families, for additional compensation to them or their dependents in case of disability or death, for vocational training of those disabled, for insurance in case of disability or death, and for the payment of a bonus upon discharge from service. The granting of benefits such as those provided for in said act is a matter of federal power exclusively, and the exercise of such power by the Congress has excluded its exercise by the state, even though the purpose were otherwise public.

"5. The benefits provided for by the act are declared to be given as a token of appreciation of the character and spirit of the patriotic service of soldiers, sailors, marines, and nurses who served in the armed forces of the United States during the war with Germany and Austria; the amount of benefits is largely governed by time of service; they are payable only to those of the classes named who were residents of Wisconsin at the time of induction into service; benefits are payable irrespective of manner of induction or character of service or discharge. Such classification and limitation of beneficiaries is not germane to the consideration of appreciation or gratitude which is the expressed purpose and object of the act. The act, therefore, denies the equality before the law which is guaranteed by sections 1, 9, and 22 of article I of the constitution of the state and by section 2 of article IV and the Fourteenth amendment of the constitution of the United States.

"6. The act provides for the assessment and collection of a surtax upon incomes, and for the assessment and collection by property taxation of a special tax, not exceeding three mills, and it is left to the estimate and determination of the service recognition board as to the amount, within prescribed limits, to be paid to the beneficiaries, and as to the amount, within the limit of three mills, to be raised by property taxation,—thereby unlawfully delegating legislative powers and violating the provisions of sections 2 and 5 of article VIII of the constitution of the state.

"7. The act provides for the levy and collection of a prop-

erty tax (the rate not to exceed three mills), only if and in so far as the prescribed surtax upon incomes may be insufficient to meet the expenditures provided for by the act.    The exemptions from income taxes to be collected for the special and extraordinary purposes of the act are different from the exemptions allowed by law in the assessment of income taxes for other and general purposes.    The surtax is laid upon a particular class of taxpayers.    The act thus constitutes special legislation for the levy and collection of taxes, makes the burden of taxation, and the amount of exemption therefrom, dependent on the purpose to which the moneys raised are to be applied, and, for the special purposes of the act, discriminates against particular classes of taxpayers.    This violates section 31 of article IV of the state constitution, prohibiting special legislation for the assessment or collection of taxes, the rule of uniformity prescribed by section 1 of article VIII of the state constitution, and the equality and justice guaranteed by sections 1, 9, and 22 of article I of the state constitution, and by the Fourteenth amendment of the federal constitution, and is violative of the inherent principles of constitutional taxation and government.

"8. The property taxes provided for by the act are to be levied for the current year; the surtax is retroactively laid upon incomes for the year 1918; in arriving at the surtax a large deduction is allowed to corporations and their stockholders which is not allowed to partnerships or other individuals,—thereby violating the rule of uniformity prescribed by section 1 of article VIII of the constitution of the state, and denying the equality before the law guaranteed by sections 1, 9, and 22 of article I of the state constitution, and by the Fourteenth amendment to the constitution of the United States.

"9. The provisions of sections 3 and 4 of the act are in violation of section 2 of article VI of the constitution of the state, providing that the secretary of state shall be *ex officio* auditor, and invest in such board discretionary powers which the legislature is without power to delegate.

"10. The act makes the levy of taxes to meet the expenditures provided for dependent upon a majority vote of the electors, thereby unlawfully delegating a power which resides exclusively in the legislature, and contravening the

provisions of sections 2 and 5 of article VIII of the constitution of the state.

## "III.

"Many of the soldiers and sailors who served with the armed forces of the United States during the war with Germany and Austria have not yet been discharged, but are still serving as a part of the army and navy of the United States, and are receiving the compensation and benefits provided by acts of Congress and are subject to the control and discipline provided by federal laws and regulations.

"As plaintiff is informed and believes, many of the states of the Union, have not adopted laws giving a bonus, gratuity, or other aid to residents of the state who served with the armed forces of the United States during said war.

"The government of the United States is now actively seeking to recruit, by voluntary enlistment, the navy and marine corps and measures are in contemplation looking to an increase in like manner of the army of the United States, and that such voluntary enlistments are being sought in the states which have not adopted laws giving a bonus, gratuity, or other aid to their residents who served in said war, as well as in this state.

"As plaintiff is informed and believes, various measures have been introduced and are pending in Congress having for their object the granting of benefits (additional to those already provided by Congress) to those who served in the armed forces of the United States during said war. Among them is a bill providing for a bonus similar to that provided for by said chapter 667.

"Among the residents of Wisconsin who served in the armed forces of the United States during said war there exist, as is judicially known to the court, differences as regards methods of induction into and discharge from service, time, place, and character of service, effect of service upon health, strength, and ability to earn, financial needs, and as regards other circumstances and conditions; there also exist differences between the character and extent of the service of the military units which composed the armed forces of the United States, which units were not generally made up of the residents of any particular state to the exclusion of the residents of other states, and some of which units, composed wholly or in part of residents of other states, had the

State ex rel. Atwood v. Johnson, 170 Wis. 218.

opportunity to perform and did perform military service conspicuous for its valor and its effect in accelerating the armistice.    Some or all of the above and other facts which the court may judicially notice will be referred to upon the hearing hereof.

"IV.

"The officials constituting the defendants herein are proceeding to the administration and execution of said act as though it were a valid law.    Unless restrained by the court, vast sums of money, probably aggregating upwards of $15,000,000, will be collected by taxation and expended in the administration and execution of the provisions of the act.    The making of estimates as to the amount to be raised by income taxation and the amount to be levied by direct taxation is already in process, and the validity or invalidity of the act vitally affects the levy and collection of taxes for the current year throughout the state.    Should taxes be levied or expenditures be made under the provisions of the act, and should the act remain in operation for several months, during which taxes were collected and their proceeds disbursed, and then be attacked and held unconstitutional, there would be involved questions as to the duties of state officials with respect to the recovery back of funds expended under the law, of the liability of the state treasurer for the making of such expenditures, of the obligation of accounting and reimbursement by the state for taxes unlawfully levied and collected, and infinite confusion would result.    Upon request duly made to the attorney general of the state he refused, and still refuses, to commence or maintain, upon his own motion, any action to test the validity of said act.

"V.

"Relator is a citizen of Wisconsin and a resident of and taxpayer in the city of Janesville, in said state.

"Wherefore plaintiff respectfully prays the judgment of this court:

"(1)  That the validity of chapter 667, Laws of 1919, be determined and the rights and duties of those charged with its administration be declared;

"(2)  That in case chapter 667, Laws of 1919, be held invalid, its enforcement be restrained; and

"(3) That such other and further relief be granted as may be proper."

*Harry L. Butler* of Madison appeared as attorney for plaintiff.

The defendants, who appeared by *John J. Blaine,* attorney general of the state of Wisconsin, and *M. B. Olbrich,* deputy attorney general, demurred to the complaint for want of facts sufficient to constitute a cause of action. The issues before this court are raised by the demurrer to the complaint.

Messrs. *Crownhart & Wylie* of Madison appeared for a large number of soldiers, beneficiaries under the act, demurred to the complaint, filed a brief, and made an oral argument.

*Roy P. Wilcox* of Eau Claire appeared as *amicus curiæ* at the request of Wm. C. Johnson Post and Everett Hale Post of the American Legion.

The following opinion was filed December 24, 1919:

KERWIN, J. The many difficult and doubtful questions arising upon the validity of the act under consideration in this case, as well as the proper construction and administration of it, if the law be declared valid, rendered it highly important and eminently proper that the present suit be brought for the purpose of finally settling the questions involved.

The able and exhaustive presentation of the case in this court on both sides makes clear the importance of final determination of the issues tendered by the complaint and demurrer.

The defendants charged with the administration of the law are entitled to have the question of its validity settled and, if valid, be advised respecting their rights and duties under it. The act provides:

"Section 1. Section (1) of chapter 452 of the Laws of 1919, is amended to read: (Chapter 452, Laws of 1919)

State ex rel. Atwood v. Johnson, 170 Wis. 218.

Section 1. The service recognition board is hereby created to consist of the governor, the adjutant general and a returned soldier to be appointed by the governor.

"Section 2. For the purpose of raising a sum sufficient to assure each soldier, sailor, marine, and nurse, including Red Cross nurses, who served in the armed forces of the United States during the war against Germany and Austria, and who at the time of his or her induction into the service was a resident of Wisconsin, a sum not exceeding ten dollars for each month of service, with a minimum of fifty dollars, as a token of appreciation of the character and spirit of their patriotic service, and to perpetuate such appreciation as a part of the history of Wisconsin, a tax of not exceeding three mills on each dollar of the assessed valuation in addition to the income surtax hereinafter mentioned is hereby levied and authorized to be included in the next tax levy; provided that in case any county shall elect by resolution of the county board of such county, adopted prior to the levy of such tax, to raise said amount by a bond issue, authority is hereby conferred upon said county to issue such bonds and thereupon the proper authorities shall remit said levy in such county.   If any person entitled to the benefits under this act be deceased before receiving such payment, then the payment accruing to said deceased shall be paid to the surviving widow, child or children, mother or dependent father, in the order herein stated, and in such case July 1, 1919, shall be deemed the date of termination of such service.   The benefit of this act shall not accrue to any person for the time spent while taking training in any student army training camp, nor to any person who, although inducted into service, did civilian work at civilian pay.

"Section 3. All sums levied and collected by taxation or raised by the issue of bonds by any county shall be paid into the state treasury and held there as a special fund to be known as the service recognition fund and disbursed upon certificates of the service recognition board, as to the persons entitled thereto and the amount to which each person is entitled.

"Section 4. The service recognition board shall have complete charge and control of the general scheme of such payments.   It shall adopt general rules, uniform throughout the state, for the distribution of said fund, the ascertain-

ment and selection of proper beneficiaries and the amounts to which beneficiaries are entitled, and for procedure, and may select or create such agents as it may deem necessary.

"Section 5. Subsection (5) of section 658 of the statutes is renumbered to be subsection (6) thereof.

"Section 6. There is added to section 658 of the statutes a new subsection to read: (Section 658) (5) For the purpose of carrying out the provisions of chapter 452 of the Laws of 1919; but bonds issued in any county for such purpose shall not exceed in amount three mills on each dollar of the total assessed valuation of such county."

Sub. (1) of sec. 7 provides for a surtax, in addition to the normal tax imposed by sec. 1087m—6, Stats., to be laid upon the taxable incomes of individuals, except as otherwise provided by law, in excess of $3,000, the surtax rate starting with one and three-fourths per cent. on the fourth $1,000 and progressively increasing until it reaches six per cent. on $12,000 or more of taxable incomes.

Sub. (2) of sec. 7 provides for a surtax, in addition to the normal tax imposed by sec. 1087m—6, Stats., upon the incomes of corporations, joint-stock companies, or associations, except as otherwise provided by law, beginning with two per cent. on the first $1,000 and progressively increasing until it reaches six per cent. of taxable incomes in excess of $7,000.

Sec. 7 further provides:

"(3) In computing the tax upon the income of corporations, joint-stock companies or associations, there shall be deducted, before such tax is computed, from the net income an amount equal to six per cent. of its capital stock, surplus and undivided profits.

"(4) The surtax provided for herein shall be upon the income received during the year ending December 31, 1918, and shall be returned, assessed and collected in the same manner and at the same time as is provided for the return, assessment and payment of the normal income tax provided for under sections 1087m—1 to 1087m—30, both inclusive, except as otherwise herein provided.

"(5) Deductions and exemptions as are provided by law

in the assessment of the normal income tax under section
1087m—6 shall be the same with respect to the assessment ·
of this surtax, but said deductions and exemptions shall not
be additional thereto and shall only be made once.

· "(6) In the collection of said surtax the tax collector
shall give his separate receipt therefor and there shall be
no offset upon the personal property tax, and section
1087m—26 shall not apply to said surtax.

"(7) The whole amount collected as surtax shall, through
the same channels as other income taxes are paid, 'be paid
into the state treasury, and section 1087m—23 of the stat-
utes shall not apply to said surtax.  The amounts so paid
into the state treasury shall be set apart for the service
recognition fund.

"(8) The service recognition board shall estimate or
cause to be estimated the amount which may be collected
under this section and determine as nearly as practicable the
balance needed for said fund, which balance shall be raised
by taxation or bond issues as provided by section 2 of this
act.

"Section 8.  There is appropriated from the service recog-
nition fund in the state treasury to the service recognition
board:

· "(1)  Such sums as may be necessary to pay each soldier,
sailor, marine and nurse, including Red Cross nurses, who  · ·
served in the armed forces of the United States during the
war against Germany and Austria, and who at the time of
his or her induction into the service was a resident of Wis-
consin, a sum not exceeding ten dollars for each month of
service, with a minimum of fifty dollars.

"(2)  Such sums as may be necessary to cover the cost
of administering this act."

Secs. 9, 10, and 11, provide for a special election.

The important questions raised by counsel for the relator
are: (1) Is the purpose of the act public within the mean-
ing of the constitution?  (2) Does the power of Congress
under the federal constitution to raise and support armies
and to provide and maintain a navy exclude state legislation
such as here involved?  (3) Is the taxing scheme embodied ·
in the act constitutional?  (4) Does the act unlawfully dele-

gate the taxing power of the legislature?    (5) Does the
law in question violate sec. 2, art. VI, of the Wisconsin con-
stitution, providing that the secretary of state shall be *ex
officio* auditor?

## I.

The learned counsel for the relator contends that the
money appropriated under the act in question is not for a
public purpose and does not subserve the common interest
and well-being of the people of the state; that where there
is no public purpose in the sense of carrying on some part
of the machinery of government, there is no power to tax;
that where the public benefit which may come from an ex-
ercise of the taxing power is merely incidental or remote,
the power is lacking; that there can be no legitimate taxa-
tion unless for the uses of the government levying the tax.

These propositions are ably argued by counsel for relator
and it is true that they are among the important questions
involved under this head.    It may be conceded that the pur-
pose of the law must in some sense be a public purpose in
order to justify the exercise of the taxing power.    Under
the act the money appropriated is awarded "as a token of
appreciation of the character and spirit of their patriotic
service, and to perpetuate such appreciation as a part of the
history of Wisconsin."

It is insisted that the services performed were performed
for the United States, not for the state of Wisconsin; that
the beneficiaries did not enter nor remain in the service at
the instance of the state, but of the United States; and that
there is no reciprocal benefit such as lies at the foundation
of constitutional taxation.

However, the benefit which flows to the United States
from the services performed is also a benefit to the state.
The United States is composed of the family of states which
in the aggregate constitute the United States.    The com-
mon defense by the nation can only be successfully main-
tained by co-operation of the states, hence when a war is

waged by the nation those supporting it are performing services as well for their respective states as for the nation. *Brodhead v. Milwaukee,* 19 Wis. 624.   In the above case at page 652 it is said:

"I think the consideration of gratitude alone to the soldier for his services, be he volunteer, substituted or drafted man, will sustain a tax for bounty money to be paid to him or his family.   Certainly no stronger consideration of gratitude can possibly exist than that which arises from the hardships, privations, and dangers which attend the citizen in the military service of his country; and all nations have ever so regarded it.   Who will say that the legislature may not, in consideration of such services, either directly or indirectly, or through the agency of the municipality or district to which he is credited, give to the soldier or his family a suitable bounty after his enlistment, or even after his term of service has expired?   I certainly cannot."

Even in the dissenting opinion in the above case this doctrine was recognized.  At page 665 Justice DOWNER, dissenting, says:

"Is the raising of money to pay bounties to volunteers who shall enlist in the service of the United States a public purpose?   The whole United States had an interest in putting down the Rebellion.   To put it down was a public benefit—a benefit to the Union—a benefit to each state—a benefit to every town, city, and village.   Here then is a public interest or benefit, in the largest sense of the term. It is sufficient to authorize a state to tax its citizens, or the United States to tax all their citizens."

This court has recognized the doctrine of the *Brodhead Case* in several subsequent cases, among others *Curtis v. Whipple,* 24 Wis. 350, 355; *State ex rel. McCurdy v. Tappan,* 29 Wis. 664, 672; *Lafebre v. Board of Education,* 81 Wis. 660, 667, 51 N. W. 952; *Lund v. Chippewa Co.* 93 Wis. 640, 650, 67 N. W. 297; *State ex rel. Garrett v. Froehlich,* 118 Wis. 129, 142, 94 N. W. 50.

While there is language in some of the decisions of this court since the *Brodhead Case* was decided which in the

232     SUPREME COURT OF WISCONSIN.     [Nov.

State ex rel. Atwood v. Johnson, 170 Wis. 218.

abstract might seem out of harmony with the rule of that case, we feel warranted in saying that the doctrine enunciated there has never been overruled by this court. The *Brodhead Case* has been followed in other jurisdictions. The following are a few of the many cases on the subject: *Cass Tp. v. Dillon,* 16 Ohio St. 38; *Speer v. Blairsville,* 50 Pa. St. 150; *Coffman v. Keightley,* 24 Ind. 509; *Veazie v. China,* 50 Me. 518; *State v. Holm,* 139 Minn. 267, 166 N. W. 181; *People ex rel. Doscher v. Sisson,* 182 App. Div. 734, 167 N. Y. Supp. 801; *State v. McClure* (Del.) 105 Atl. 712; *State ex rel. Campbell v. Stewart,* 54 Mont. 504, 171 Pac. 755; *State ex rel. Morris v. Handlin,* 38 S. Dak. 550, 162 N. W. 379; *Leavenworth Co. v. Miller,* 7 Kan. 479; *Opinion of Justices,* 175 Mass. 599, 57 N. E. 675; *Opinion of Justices,* 190 Mass. 611, 77 N. E. 820; *U. S. v. Gettysburg E. R. Co.* 160 U. S. 668, 16 Sup. Ct. 427; Judson, Taxation (2d ed.) § 386.

In Judson on Taxation, *supra,* at page 407 it is said:

"Whatever legitimately tends to inspire patriotic sentiments, and to enhance the respect of citizens for the institutions of their country, and incites them to contribute to its defense in time of war, has been held to be a lawful public purpose, such as will justify the exercise either of the power of taxation or of the power of eminent domain."

The doctrine is well stated in *State ex rel. Morris v. Handlin,* 38 S. Dak. 550, 162 N. W. 379:

"Looking at the substance and general spirit of the situation, we are of the view that any assault upon the government of the United States by insurrection or invasion is also an assault against each and every state government in the Union, and that it is equally the duty of the state to assist in repelling such assaults."

"The services performed while under the draft were public and rendered, in part, for the benefit of this state as one of the states of the nation. It would seem from a reading of the state and federal constitutions that the interests and duties, on the part of the state and nation in relation to

17]                AUGUST TERM, 1919.                233

State ex rel. Atwood v. Johnson, 170 Wis. 218.

the common defense in resisting threatened invasion or insurrection, are so inseparably wound and woven together that it would make but little difference, if any, whether the members of the military organization which were to receive the benefit of the appropriation was state or national."

And in *Opinion of Justices,* 190 Mass. 611, *supra,* it is said:

"The doubt which arises as to the rights of the states of this country in this respect grows out of our dual system of government. The federal government alone has power to declare war, and our soldiers in the Civil War were in the military service of the United States. So far as we have been informed, since the adoption of the federal constitution none of the states has assumed to grant pensions to soldiers for service in the armies of the United States. For such purposes it is generally understood that our government is the federal government; but for many purposes, and in a certain field, Massachusetts is a sovereign state, maintaining an independent government. In another relation it is a member of the family of states, and a constituent force in the national organization. We are inclined to the opinion that, in this relation, it is so identified with the nation that it may treat the service of its citizens who serve to its credit in the armies of the United States as entitled to recognition from Massachusetts as a sovereign state. Each of us is a citizen of Massachusetts as well as a citizen of the United States. Massachusetts may honor her citizens for what they do for the national government, in those fields to which she sends them as her representatives under the constitution and laws of the United States."

The gratitude due the soldier is no idle sentiment. He who leaves his home and kindred, enters upon the trials and hardships of a soldier, risks his life upon the battle-field for the good of his country, is certainly entitled to the gratitude of all citizens.

There is another question which is important in considering the public purpose of the law. The assertion of power for a long period of time on the part of the state in adopting legislation similar to that here involved, while perhaps not

controlling, is entitled to great weight on the question of public purpose.   The state of Wisconsin from early times haȿ passed statutes awarding money by taxation for purposes not more public than the purpose involved in the act under consideration.   A long line of legislative enactments of the state of Wisconsin as well as similar legislative enactments in other states are collected in the briefs of counsel for the defendants, which show that not only the state of Wisconsin but other states have regarded such or similar purposes as that here involved public.   Such affirmance on the part of the legislatures and continued custom amounting. to practical construction of constitutional provisions has great weight on the question of validity of the legislation as appears from decisions not only of this state but of the United States supreme court.   *State ex rel. Hudd v. Timme,* 54 Wis. 318, 11 N. W. 785; *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627; *Loan Asso. v. Topeka,* 20 Wall. 655.   In the latter case the court said:

"They must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether state or municipal.   Whatever lawfully pertains to this and is sanctioned by time and the acquiescence of the people may well be held to belong to the public use, and proper for the maintenance of good government, though this may not be the only criterion of rightful taxation."

We have, in the instant case, not only this assertion of power on the part of the legislature and long continued custom, but we also have the overwhelming vote of the people at a special election held for the purpose of ratifying the levy of the tax.   A review of the numerous statutes referred to in the briefs will show how liberal our legislature has been in making provisions in aid of soldiers of the Civil War.

We feel warranted in holding upon principle and author-

ity that the purpose of the act is a public purpose within the meaning of the constitution.   .

## II.

It is further insisted by counsel for relator that the power of Congress under the federal constitution to raise and support armies and to provide and maintain a navy excludes state legislation such as is involved in the instant case.

This contention is based upon sec. 8, art. I, of the constitution of the United States, which provides:

"The Congress shall have power:
[11] "To declare war, . . .
[12] "To raise and support armies, . . .
[13] "To provide and maintain a navy;
[14] "To make rules for the government and regulation of the land and naval forces;
[15] "To provide for calling forth the militia to execute the laws of the Union, suppress insurrections and repel invasions;
[16] "To provide for organizing, arming, and disciplining the militia, and for governing such part of them as may be employed in the service of the United States, reserving to the states respectively the appointment of the officers, and the authority of training the militia according to the discipline prescribed by Congress;
[18] "To make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof."

Sec. 10, art. I, of the United States constitution provides that:

[3] "No state shall, without the consent of Congress, lay any duty of tonnage, keep troops or ships of war in time of peace, enter into any agreement or compact with another state or with a foreign power, or engage in war, unless actually invaded, or in such imminent danger as will not admit of delay."

Art. VI of the constitution of the United States provides:

[2] "This constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made or which shall be made under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

The following cases are cited in support of relator's position under this head: 12 Corp. Jur. 744; *Sturges v. Crowninshield,* 4 Wheat. 122, 193; *Tarble's Case,* 13 Wall. 397, 20 L. Ed. 597, 600; *Chinese Exclusion Case,* 130 U. S. 581, 604, 605, 9 Sup. Ct. 623; *Selective Draft Law Cases,* 245 U. S. 366, 381, 38 Sup. Ct. 159; *Ferguson v. Landram,* 1 Bush (Ky.) 548, 562; *People ex rel. Barlow v. Curtis,* 50 N. Y. 321, 326–328; *Konkel v. State,* 168 Wis. 335, 339, 340, 170 N. W. 715.

In considering the arguments of counsel and cases, it may be well to refer to some general provisions involving the relative powers of the state and federal governments. It must be borne in mind that the federal government under the constitution has only delegated powers, and powers not delegated to it or prohibited to the states are reserved to the states or to the people of the several states. It follows, therefore, that powers not expressly or by necessary implication granted by the constitution to the federal government nor prohibited by it to the states are reserved to the states respectively or to the people. Amendm. X, Const. U. S.

The objection raised by counsel under this head was urged in *Brodhead v. Milwaukee,* 19 Wis. 624, and disposed of as follows:

"Still another objection is, that the whole power of levying troops, organizing armies, fixing compensation, paying bounties, etc., resides in Congress, and that the states can take no action in the matter. This objection was urged and fully met in the Pennsylvania decision. If Congress has

the power and may legislate to the entire exclusion of the states, which is very doubtful so far as state aid to the persons and families of volunteers or drafted men is concerned, still Congress has not done so."

It is clear that Wisconsin has reserved to itself a certain military policy not inconsistent with that granted to the federal government under the United States constitution. Under the Wisconsin constitution the legislature "shall determine what persons shall constitute the militia of the state, and may provide for organizing and disciplining the same in such manner as shall be prescribed by law" (art. IV, sec. 29). "The governor shall be commander-in-chief of the military and naval forces of the states" (art. V, sec. 4). "The legislature may also borrow money to repel invasion, suppress insurrection, or defend the state in time of war . . ." (art. VIII, sec. 7). "The military shall be in strict subordination to the civil power" (art. I, sec. 20).

Amendm. II of the federal constitution provides: "A well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed."

It is clear, therefore, under the federal constitution as well as under our state constitution that certain military policy is reserved to the state. See Wis. Stats. 1917, secs. 21.01 to 21.68 and 22.01 to 22.08, and 39 U. S. Stats. at Large, 197, ch. 134, sec. 57 *et seq.,* U. S. Comp. Stats. Ann. § 3041 *et seq.*

The case of *New York v. Miln,* 11 Pet. 102, involved the power given to Congress under the federal constitution to regulate commerce. Under a statute of the state of New York imposing penalties for failure by the master or commander of a ship to make report, it was held that the statute was valid, and that the power of Congress under the commerce clause of the constitution was not exclusive. At page 139 the court said:

"That a state has the same undeniable and unlimited

jurisdiction over all persons and things, within its territorial limits, as any foreign nation; where that jurisdiction is not surrendered or restrained by the constitution of the United States.    That, by virtue of this, it is not only the right, but the bounden and solemn duty of a state, to advance the safety, happiness and prosperity of its people, and to provide for its general welfare, by any and every act of legislation, which it may deem to be conducive to these ends; where the power over the particular subject, or the manner of its exercise is not surrendered or restrained, in the manner just stated."

It may be conceded for the purposes of this case that the power to raise and support an army and a navy rests with Congress, and that the states are precluded from adopting laws which may obstruct or embarrass such exercise of power.    But the soldiers' bonus law under consideration does not interfere with the exercise of the power to raise and support an army.    Justice Cooley in his work on Taxation, page 217, lays down the rule as follows:

"The general government having authority to declare war and conduct warlike operations, no question can exist of its right to levy taxes in order to pay bounties for military services performed or promised.    The several states may with as little question do the same."

In matters of concurrent jurisdiction between the federal government and the states, the state has the right to legislate where such legislation is not in conflict with the act of Congress.    *Bosworth v. Harp,* 154 Ky. 559, 157 S. W. 1084; *State v. Holm,* 139 Minn. 267, 166 N. W. 181.

This rule is recognized and asserted in *Konkel v. State,* 168 Wis. 335, 170 N. W. 715.    At page 341 it is said:

"The United States and the states have a concurrent right in respect to the subject matter under consideration.    The question then arises whether or not there is a conflict between ch. 409 [Laws 1917] and the soldiers' and sailors' civil relief act, for, if there be a conflict, the act of Congress, by par. 2, art. VI, of the federal constitution, is made the supreme law of the land."

Now it is clear from the decisions of this court, including the *Brodhead Case, supra,* as well as numerous decisions in other courts, that there is no conflict between the legislation here under consideration and the constitution of the United States and laws passed in pursuance thereof. It is true, as stated in *Sturges v. Crowninshield,* 4 Wheat. 122, relied upon by counsel for relator, that "Whenever the terms in which a power is granted to Congress, or the nature of the power, requires that it should be exercised exclusively by Congress, the subject is as completely taken from the state legislatures, as if they had been expressly forbidden to act upon it."

The above rule, when applied to the particular facts of the case, is a correct statement of the law and is as strong authority in favor of relator's position as any cited by counsel. The point involved in the *Crowninshield Case* is briefly stated in the syllabus at page 122 as follows:

· "Since the adoption of the constitution of the United States, a state has authority to pass a bankrupt law, provided such law does not impair the obligation of contracts, within the meaning of the constitution, article I, section 10, and provided there be no act of Congress in force to establish a uniform system of bankruptcy, conflicting with such law."

In *Konkel v. State,* 168 Wis. 335 (170 N. W. 715), at page 340 this court said:

"In certain cases it is held, where the United States and the state have concurrent powers, that the exercise of the power of the United States is exclusive and the enactment of the state must stand aside. *Sturges v. Crowninshield, supra.* In certain other cases it is held that the enactments of both the United States and the state may stand together if there is in fact no conflict. *Asbell v. Kansas,* 209 U. S. 251, 28 Sup. Ct. 485; *Savage v. Jones,* 225 U. S. 501, 32 Sup. Ct. 715. In a particular case classification is often difficult, and the decisions of the federal as well as of the state courts are not always consistent."

Counsel for the relator have brought to the attention of

the court numerous acts of Congress respecting federal
military regulations.    We do not feel warranted in discuss-
ing at length such legislation; it is sufficient to say that in
our opinion there is nothing in the soldiers' bonus law of
Wisconsin conflicting with the federal legislation.    The
federal acts relied upon have reference primarily to the
status of the soldier as such, while engaged in the service of
the United States.    *Konkel v. State, supra.*

The soldiers' bonus law, based as it is upon the interest of
the state in the successful prosecution of the war and "as
a token of appreciation of the character and spirit of their
patriotic service, and to perpetuate such appreciation as a
part of the history of Wisconsin," does not burden, inter-
fere, or conflict with the several federal acts to which coun-
sel refer.

As pointed out in *Southern R. Co. v. Reid,* 222 U. S. 424,
32 Sup. Ct. 145, acts of Congress and state laws are in con-
flict when, if one obeys the state law, he incurs the penalties
of the federal law, and if he obey the federal law he incurs
the penalties of the state law.    As stated in *Missouri, K. &
T. R. Co. v. Haber,* 169 U. S. 613, 18 Sup. Ct. 488, "A
[state] statute enacted in execution of a reserved power of
the state is not to be regarded as inconsistent with an act of
Congress passed in the execution of a clear power under the
[federal] constitution, unless the repugnance or conflict is
so direct and positive that the two acts cannot be reconciled
or stand together."

Without further discussion, we are satisfied that the
power of Congress under the federal constitution to raise
and support armies and to provide and maintain a navy
does not exclude state legislation such as that here involved.

### III.

It is further urged by counsel for relator that the taxing
scheme embodied in the act is unconstitutional.    This con-
tention is based upon the idea that the law is in conflict with

constitutional provisions respecting special legislation, uniformity, equal distribution of burdens, and equal protection of the law. That the surtax provisions of the act in question constitute special and class legislation. The material points raised under this head are:

(a) The law is special and prohibited by sec. 31, art. IV, of the constitution and sec. 1, art. VIII, which provides that the rule of taxation shall be uniform.

(b) That the special character and inequality of the act as applied to the different forms of taxation is obnoxious to constitutional provisions because there is no basis for the inequality of burden.

(c) That the surtax provision of the act constitutes special and class legislation:

1st. That it is imposed upon a selected class of 1918 incomes.

2d. That exemptions are unequal and unreasonable.

3d. The provisions with reference to exemptions of personal property are unequal and unreasonable. This provision is claimed discriminatory, not only as between individuals but as to corporations.

4th. That there is also a lack of uniformity and equality between railroads and others taxed on an *ad valorem* basis.

No time need be spent in discussing the tax imposed not exceeding three mills on the dollar upon the taxable property of the state. This provision is included in an amendment to the statute, and provides for a general tax upon all property to meet the burden imposed by the law, not covered by the surtax, and is levied for a public purpose. The three-mill tax, therefore, cannot be open to the objection of inequality of burden, special legislation, or want of equal protection of the law.

The principal attack made by relator, as we understand the argument, is upon the surtax. The surtax provision is in effect an amendment to the income tax law by increasing the tax upon incomes. If the surtax be not open to objec-

tion under the law relating to income taxation it must be held valid.    The only uniformity required under the income tax law is uniformity within the class.    *Income Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164.

The contention that the law is special and prohibited by sec. 31, art. IV, of the constitution is without merit.    *Income Tax Cases, supra.*    Clearly the objection cannot apply to the surtax if classification be proper and exemptions reasonable.    The argument under this head may be considered under two propositions: (1) Classification, and (2) Exemptions.    It is said the classification is not valid because imposed upon a selected class of 1918 incomes, hence a closed class with no opportunity for others to grow into the class.    The legislature made no classification.    It was confronted with the problem of having to raise a large sum of money for distribution as soon as practicable.    To secure such sum it levied the same upon the basis of incomes of 1918, the tax upon which is payable in 1920, and upon the assessed value of real estate and personal property for the year 1919, the same being the resources of the next tax levy as specified in sec. 2 of the act.    There was no more a classification here than there is in any case where an additional sum is added to the usual tax to be raised for any given years.

Under the decisions of this court since the passage of the income tax law we have in this state two independent systems of taxation, namely, property tax and income tax; and while the uniformity clause of the constitution applies to property tax it has no application to income tax.    The amendment to the constitution which is the basis of the income tax (sec. 1, art. VIII) provides, "Taxation may also be imposed on incomes, privileges and occupations, which taxation may be graduated and progressive, and reasonable exemptions may be provided."

The proposition which confronted the legislature in the case at bar was to provide for an emergency tax and one

which would expire within the time fixed for raising the funds. The legislature, therefore, provided for raising a part of the fund by a surtax, or tax added to the normal income tax. So we must test this surtax by the same principles which apply to the original income tax law.

The taxation of persons progressively under the income tax law may be levied by the legislature and reasonable exemptions may be provided. *Income Tax Cases,* 148 Wis. 456 (134 N. W. 673, 135 N. W. 164), at p. 506. As said in that case (p. 507): "It clearly appears that taxation of property and taxation of incomes are recognized as two separate and distinct things in the state constitution; both may be levied, and lawfully levied; because the constitution says so." The court further said at page 504, "With the political or economic policy or expediency of the law we have nothing to do."

As has been repeatedly decided by this court, the legislature has a very broad discretion under the income tax law, and as regards classification it is enough that there be no discrimination in favor of one as against another of the same class, and that the method of assessment and collection of taxes is not inconsistent with natural justice. *Michigan C. R. Co. v. Powers,* 201 U. S. 245, 26 Sup. Ct. 459; *Income Tax Cases, supra; State ex rel. Bernhard Stern & Sons v. Bodden,* 165 Wis. 75, 160 N. W. 1077; *State ex rel. Manitowoc G. Co. v. Tax Comm.* 161 Wis. 111, 114, 152 N. W. 848; *Northwestern M. L. Ins. Co. v. State,* 163 Wis. 484, 489, 155 N. W. 609, 158 N. W. 328.

It is also insisted by counsel for relator that the exemptions are unequal and discriminatory in many respects and particularly as between persons and corporations and also as between corporations. There may have been within the mind of the legislature valid reasons for the exemptions made and which are complained of by the relator, and unless we can say that the exemptions are manifestly unjust, arbitrary, or whimsical, courts have no power to interfere with

the legislative enactment merely because the judicial mind might reach a different conclusion as to the policy or wisdom of the law. We must presume that in laying the tax under the law in question the legislature surveyed the whole field in determining upon a reasonable apportionment of tax burden. And the legislature had a right to take into account in levying the burdens who was best able to pay. *Income Tax Cases, supra.*

In regard to the broad discretion of the legislature, we cannot do better than quote from *Chicago & N. W. R. Co. v. State,* 128 Wis. 553 (108 N. W. 557), at p. 642:

"Under our constitution, it must be remembered, there is the amplest power on the part of the legislature to exempt an entire class of property from taxation, and to make such class very narrow, even excluding from the benefits accorded to the members thereof those owning property of the same general class, so long as the character of that owned by those of the subclass is so far different from that owned by others, as, within the boundaries of reason at least, to suggest necessity or propriety, having regard to the public good and the constitutional object to be attained, and limitations in respect thereto, of substantially different legislative treatment. . . ."

"The discretion of the legislature in this field is so broad that it is not competent for the court to mark the constitutional limitations of it other than at the farthest one might go without transcending all reason." Page 655.

What constitutes proper classification has been repeatedly considered by this court and further discussion is unnecessary. *State ex rel. Risch v. Trustees,* 121 Wis. 44, 54, 98 N. W. 954; *Johnson v. Milwaukee,* 88 Wis. 383, 390, 60 N. W. 270; *Wagner v. Milwaukee Co.* 112 Wis. 601, 607, 88 N. W. 577; *Bingham v. Milwaukee Co.* 127 Wis. 344, 347, 106 N. W. 1071; *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, 119 N. W. 309, 120 N. W. 756; *Ladd v. M., St. P. & S. S. M. R. Co.* 142 Wis. 165, 125 N. W. 468; *Maercker v. Milwaukee,* 151 Wis. 324, 328, 139 N. W. 199. The classification here is in conformity with the rule of the

foregoing decisions.   *Income Tax Cases,* 148 Wis. 456, 134
N. W. 673, 135 N. W. 164.

There is no discrimination within the class.   The ex-
emptions in each class apply to every member of the class,
and it is no objection that the exemptions in one class are
different from those in another where there is proper classi-
fication.

The fact that the surtax of the individual begins with the
fourth thousand of taxable income, while that of corpora-
tions, joint-stock companies, or associations begins with the
first thousand, does not make the exemption arbitrary or
whimsical, because there may have been good grounds for
such difference in the mind of the legislature after a review
of the whole field.   The legislature obviously sought to
make a fair distribution of burdens between the two classes
by providing that corporations, joint-stock companies, and
associations should be allowed to deduct, before the tax is
computed, from net income an amount equal to six per cent.
of its capital stock, surplus, and undivided profits.   It is well
settled that putting corporations in one class and individuals
in another is proper classification.   This is decided by this
court in *Income Tax Cases, supra,* at page 458, where it is
held that there is a substantial difference in situations be-
tween individuals and corporations which justifies the classi-
fication.   A corporation is an artificial creation of the state
endowed with franchises and privileges of many kinds
which the individual has not.   *Northwestern M. L. Ins. Co.
v. State,* 163 Wis. 484, 155 N. W. 609, 158 N. W. 328.

Counsel makes the point that, since the general law pro-
vides that the income taxpayers should be entitled to an off-
set to the extent of their personal property and the present
act denies the offset against the surtax levied for the partic-
ular purpose of the act, the present act is objectionable and
discriminatory and a denial of due process.   We do not re-
gard this objection tenable.   Such offset was sustained by
this court in the *Income Tax Cases, supra,* and the same

objections which are raised here could have been raised with equal force there. Moreover, what we have heretofore said we think sufficient on this subject.

It is further insisted that the provision allowing corporations to deduct six per cent. of their capital stock, surplus, and undivided profits when applied to foreign corporations and companies who derive large incomes from Wisconsin business, though perhaps having but little capital invested in Wisconsin, is discriminatory, because it is applicable without exception or qualification to the income of corporations. A foreign corporation, therefore, although having a comparatively large income from Wisconsin business, with but a small part of its capital invested in Wisconsin, might by deducting six per cent. of its entire capital, surplus, and undivided profits, wipe out its entire surtax.

We do not decide whether the section as so construed would be discriminatory or not. We do not think the section should be so construed. Sec. 7 is in effect an amendment of sec. 1087$m$—6, Stats., which is a part of the income tax law. The section, as amended, therefore must be construed as a part of the income tax act. The following is a part of sub. 3, sec. 1087$m$—2:

"With respect to other income, persons engaged in business within and without the state shall be taxed only upon such income as is derived from business transacted and property located within the state, which may be determined by an allocation and separate accounting for such income when made in form and manner prescribed by the tax commission, but otherwise shall be determined in the manner specified in subdivision (e) of subsection 7 of section 1770$b$ of the statutes, as far as applicable."

Taking the law as a whole, it must be fairly construed to mean that in determining the basis upon which the six per cent. deduction is to be computed, the capital stock, surplus, and undivided profits must be allocated upon the same basis as the allocation of the income tax is to be made. So con-

strued, all corporations, foreign and domestic, are treated alike, and there is no discrimination in favor of or against foreign corporations. The taxable income is derived from business and property located within the state, and in computing the deduction the basis of the deduction should be made the property out of which the income is earned. This construction is not only just and reasonable, but carries out the legislative intent and avoids the unreasonable conclusion that the legislature intended to permit foreign corporations, in many instances, to be wholly exempted from the tax.

Point is also made by relator that there is lack of uniformity and inequality of treatment as between railroads and others taxed on the *ad valorem* basis. The question discussed under this head refers to detail in the administration of the taxing power and the points urged do not seem to affect the validity of the act in question. We think this quite clear from the cases cited by relator. *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557, and *Minneapolis, St. P. & S. S. M. R. Co. v. Douglas Co.* 159 Wis. 408, 150 N. W. 422.

What has been said heretofore we think sufficient to show that the question of uniformity and inequality is not involved in the point raised.

It is further urged that the right granted to county boards to elect to issue bonds is an unlawful delegation of legislative power and violates the constitutional provision that the rule of taxation shall be uniform. We do not think this position well taken. The right to levy the mill tax is not delegated to counties. The levy is a legislative act, and the right granted to the county to issue bonds is a privilege which it may exercise at its option in making provision for the payment of the tax and thereby the amount of the levy may be remitted. There is no delegation of power to the county respecting the levy. The tax under the present act is levied by the legislature and the bond issue is a mere detail regarding payment. The payment is adminis-

trative, not legislative. Under this head counsel for relator
relies upon *State ex rel. Carey v. Ballard,* 158 Wis. 251,
148 N. W. 1090, but it will be seen that in that case the
legislative power to levy the tax under the act there involved
was delegated to a group of freeholders of the county, so
there was clearly a delegation of legislative power to levy a
tax, hence the case is not in point here. We do not under-
stand that the provision with reference to the issue of bonds
was intended to relieve the counties so electing to issue bonds
from paying their taxes at the same time and in the same
manner as counties that had not issued bonds are required
to do, or to spread the period of payment beyond the time
for the payment and collection of taxes.

## IV.

It is further contended by relator that the duties con-
ferred upon the recognition board provided in the act was
a delegation of legislative power. We regard this conten-
tion untenable. The duties of the recognition board are
purely ministerial, and under repeated decisions of this
court cannot be regarded as a delegation of legislative
power. *In re Appointment of Revisor of Statutes,* 141
Wis. 592, 124 N. W. 670; *Union L. Co. v. Railroad Comm.*
144 Wis. 523, 129 N. W. 605; *State ex rel. Buell v. Frear,*
146 Wis. 291, 131 N. W. 832; *Chippewa & F. I. Co. v.
Railroad Comm.* 164 Wis. 105, 159 N. W. 739; *State v.
Lange C. Co.* 164 Wis. 228, 157 N. W. 777, 160 N. W. 57;
*State ex rel. Owen v. Stevenson,* 164 Wis. 569, 161 N. W. 1.

Various provisions of the statute recognize this rule. In
*Income Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W.
164, it is said: "It is not a delegation of legislative power
to vest in the state tax commission, by law, the power of
appointing assessors of incomes and fixing their salaries."
In the instant case the legislature has determined the rule
of law respecting the duties of the recognition board, and
the determination of the facts is vested in the board. 1

Cooley, Taxation (3d ed.) 99, 100; *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557; *State ex rel. Carey v. Ballard,* 158 Wis. 251, 148 N. W. 1090.

In view of the various statutes of this state touching this subject and the decisions of this court we regard discussion of the subject unnecessary.

## V.

It is also insisted that the law in question violates sec. 2, art. VI, of the constitution, which provides that the secretary of state shall be *ex officio* auditor. The contention under this head is in effect that the power of audit is taken from the secretary of state and given to the service recognition board. We do not regard this contention tenable. The powers given to the service recognition board are of an administrative character. *State ex rel. Rosenhein v. Frear,* 138 Wis. 173, 119 N. W. 894.

It is true that the law gives the service recognition board charge and control of the general scheme of payments and is authorized to adopt rules, uniform throughout the state, for the distribution of the funds and the ascertainment and selection of proper beneficiaries, and the amounts to which beneficiaries are entitled. But in the last analysis the secretary of state shall audit and pass upon all matters of which, under the constitution, he is *ex officio* auditor. We are satisfied that the law does not interfere with the constitutional authority of the secretary of state as auditor. *U. S. v. Sanborn,* 135 U. S. 271, 10 Sup. Ct. 812; *Rinder v. Madison,* 163 Wis. 525, 158 N. W. 302; *State ex rel. Langer v. Kositzky,* 38 N. Dak. 616, 166 N. W. 534.

It is further insisted by relator, but we think not seriously, that the provision for submission to the people of the question involved under the law as to whether the tax should be levied renders the act unconstitutional. This court has held that the legislature may make the taking effect of the law dependent upon a vote of the people. *Smith v. Janes-*

*ville,* 26 Wis. 291; *State ex rel. Van Alstine v. Frear,* 142 Wis. 320, 125 N. W. 961.

In closing this opinion we deem it proper to refer to a misfit of certain administrative details of the act. The proceeds of the property tax will be returned to the state treasurer along with the general property taxes not later than the second Monday of March. The income tax is not required to be returned to the state treasurer until the 1st day of May. Sec. 1121. The result will be that a portion of the money will be available for the payment of the bonuses at least six weeks before all is available therefor. Either all must wait until the 1st of May or some will be paid much earlier than others. Either solution may result in an unfortunate misunderstanding, if not dissatisfaction. We see no reason why the legislature could not have required the income tax to be returned with the general property tax, and its failure to do so was no doubt the result of oversight. However, if the various county treasurers co-operate in the spirit prompting the enactment of the law, the administrative hitch pointed out may be avoided. While they are not required under the law to make return of the income tax until the 1st day of May, they are not obliged to withhold such tax until that date, but are at liberty to remit the same as soon as it comes into their possession. We have no doubt that the county treasurers will cheerfully co-operate, to the end that the money available for the payment of these bonuses will be seasonably transmitted to the state treasurer, enabling him to make prompt payment, and thus avoid resulting annoyance and misunderstanding.

It follows that the demurrer to the complaint must be sustained.

*By the Court.*—The demurrer to the complaint is sustained, and the action dismissed.