## Straight Creek Bus, Inc., et al. v. Saylor et al.

Dec. 8, 1944.

Rehearing Denied Jan. 26, 1945.

As Extended Jan. 30, 1945.

Logan E. Patterson, Leslie W. Morris and Marion Rider for appellant.

Smith & Leary for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

On June 29, 1943, the appellee, Morris Saylor, doing business as Bell Coach Lines, was granted a Certificate of Convenience and Necessity to operate a bus line from Pineville to Crocket and Kettle Island, Kentucky, via Highways 21 and 221. He failed to begin operation under the Certificate within sixty days thereafter, and on August 31, 1943, the appellant, which had previously been granted a similar Certificate and hence had protested the granting of a Certificate to appellee, filed a written statement with the Director of the Division of Motor Transportation, calling attention to appellee's delinquency, and requesting that an order be entered declaring appellee's certificate null and void in accordance with the provisions of KRS 281.190, Subsection 3, which is as follows: "If any person holding a certificate over any public highway in this state between fixed termini or over a regular route fails to begin operation under the certificate on said line for a period of sixty days, or abandons operation thereunder, or fails to pay the renewal fees therefor for a period of thirty days after the due date thereof, or fails to keep the required insurance on file and in force, such certificate shall be and become null and void, and an order to that effect shall forthwith be entered on the records of the Division of Motor Transportation."

The Director notified appellee to appear and show cause why the Certificate should not be held null and void in accordance with the terms of the Statute; and during the course of the hearings held pursuant to that notice, appellee filed a response in which he set forth that immediately after the granting of the Certificate, he, in the name of his Company, "sought to obtain authority from the Office of Defense Transportation of the United States Government to commence operations and to inaugurate service but was advised by the Federal authorities charged with the responsibility of issuing gasoline and approving public transportation operations that it should not commence operations under this certificate until further notice from them, and in order to comply with the Federal regulations so as not to prejudice its right to obtain gasoline, tires, busses and replacements and in order to fully comply with the direction of Federal officials, it deferred placing said bus service into operations;" and further, that if ap-

pellant had not filed its statement requesting the entry of an order declaring the Certificate to be null and void, appellee "could and would have obtained permission from the Federal Government to inaugurate this service and would have placed the same in operation and would have fully complied with the rules and regulations of this department concerning insurance, payment of mileage tax, etc."

The Director adjudged the response insufficient and entered the requested order, whereupon appellee appealed to the Franklin Circuit Court, which on January 28, 1944, entered a judgment setting aside the order of the Director and requiring him to reinstate the Certificate; and from that judgment the present appeal has been prosecuted by the holder of the previously granted Certificate.

At the time appellee was granted his Certificate there was in force general order No. 21 issued by the Director of the Office of Defense Transportation, a section of which provided: "On and after November 15, 1942, no person shall operate any commercial vehicle within the continental limits of the United States unless there is in force with respect to such commercial motor vehicle a certificate of war necessity issued by the Office of Defense Transportation governing such operation."

Appellee relies on the inescapable fact that since the Federal Constitution is the supreme law of the land, a Federal enactment authorized by that instrument prevails over a state statute and suspends the operation of the latter when its enforcement would necessitate or sanction the performance of an act prohibited by the former. But obviously that rule of necessity has no application here since there is no conflict between the Federal order and the State statute. True the Federal order requires that during war time the operator of a commercial vehicle, regardless of whether he holds a state permit, must obtain a federal Certificate; but it cannot plausibly be said that such a requirement suspends a state statute which commands nothing to the contrary, but merely withdraws a privilege to operate in the event the beneficiary fails or is unable to avail himself of the privilege within a specified time. As we see it, the sole question is whether in the exercise of our proper function we should read into a Legislative Act a provision wholly unauthorized by its text and

foreign to its intent. If the Legislature had indicated that delay beyond sixty days in beginning operation under the Certificate might be excused if occasioned by unavoidable casualty, or, for that matter, by any circumstance or state of fact whatever, we could reasonably hold that such delay should be excused when occasioned by the necessity of complying with interfering war time regulations, although the Legislature had not foreseen their promulgation. Courts are not limited to the literal wording of an Act indicating what exceptions to its operations are permissible when any, by its terms or necessary intendment, are permissible. But where it is apparent that no exceptions were intended, we cannot properly create them. Here, assuming the Statutes to have been observed, the public demand for service caused the Certificate to be issued. The same demand dictated that if the service was not promptly inaugurated, the opportunity to supply it should be opened to others who might be able to do so. The primary intent to benefit the public is apparent in all of the Statutes regulating the granting and revocation of such certificates; and hence, the intent of the Legislature that there should be no exceptions to the operation of the provision here under consideration is likewise apparent. Moreover, even though it were material to the decision of the case, we could not say that no other company could have secured a Federal Certificate within a period of sixty days merely because appellee was unable to do so.

We find no merit in appellees' contention that his constitutional rights were violated by the order of the Director voiding the Certificate of Convenience and Necessity formerly granted him.

It follows that the Trial Court should not have disturbed the order of the Director of the Division of Transportation; but this conclusion will not preclude appellee from applying for another Certificate of Convenience and Necessity, which, if granted, will remove the barrier he alleges now exists to prompt and favorable consideration of his application for a Federal permit.

Judgment reversed.

Whole Court sitting.

Judge Sims dissenting.

I cannot agree with the majority of the Court that

order No. 21 issued by the Director of the Office of Defense Transportation (hereinafter referred to as ODT) is not in conflict with KRS 281.190. The federal order prohibits any one who has obtained a certificate of convenience and necessity under our statute from operating a bus until a permit is received from ODT. This federal order does not provide a time limit within which it will grant or refuse such permit after an application is made to ODT for it, and this fact brings it in conflict with KRS 281.190, subsec. 3, which automatically voids the state certificate if the holder fails to begin operations thereunder within 60 days after it is issued. If the operator obeys the state law, he runs afoul the federal law; and if he obeys the federal law, he runs afoul the state law. Of necessity this makes a conflict between the state and federal laws. 11 Am, Jur., sec 175, pp. 872, 873; Southern R. Co. v. Reid, 32 S. Ct. 140, 222 U. S. 424, 56 L. Ed. 257; State ex rel, Atwood v. Johnson, 170 Wis. 218, 175 N. W. 589, 7 A. L. R. 1617. Such conflict would excuse appellee from complying with KRS 281.190, subsec. 3, Cinquegrano v. T. A. Clark Motors, 69 R. I. 28, 30, A. 2d 859; 3 Southerland Statutory Construction Sec. 2027. This conflict may be avoided by reading into our statute an exception that the 60 day limitation is not applicable until the ODT has issued its permit, which is permissible, as will be subsequently shown.

No criticism is hereby directed at ODT's order No. 21, as there is no doubt that it is a salutary and necessary war measure. But the Director of the Division of Motor Transportation of Kentucky should certainly not be required to cancel the state certificate when the federal permit is not issued within 60 days after the state certificate is issued. The purpose of KRS 281.190, subsec. 3 is to prevent delay on the part of an operator in making use of his certificate so that the public may receive the service to which it is entitled, but the majority opinion thwarts the statute and brings about the very thing the Legislature sought to prevent. Should the ODT grant its permit 61 days after the state issued a certificate, then under the ruling of the majority, the Director must cancel the certificate he issued and the public must wait while the would-be-operator goes to the expense and trouble of filing a new application upon which there must be a notice of at least 10 days before there can be a hearing, KRS 281.060. As a matter of practice the Director requires a 30 day notice.

314

Sight is not lost of the reasoning in the majority opinion that KRS 281.190, subsec. 3, contains no exception by the Legislature and the courts are without authority to read an exception into the statute. It seems to me this is answered by the rule that it is proper to imply an exception in a statute in order to obviate a construction which would be unjust, oppressive, unreasonable or absurd, and one that the Legislature never intended to include. Surely, if the Legislature of Kentucky had foreseen that a federal permit would have to be obtained before the state certificate could be put into effect, and that there was no time limit within which ODT had to act, the law makers would not have required the certificate to be automatically cancelled if not put into operation within 60 days after it was issued. 50 Am. Jur., sec 433, p 454; Church of Holy Trinity v. United States, 12 S. Ct. 511, 143 U. S. 457, 36 L. Ed. 226.

The opinion of the majority will cause great confusion in Kentucky in issuing certificates of convenience and necessity and will practically nullify all future certificates issued by the state and will necessitate an applicant to first obtain a federal permit before incurring the trouble and expense of obtaining a useless and meaningless state certificate, all of which would be obviated by giving our statute a practical and common sense interpretation, and one which would carry out the intention of the Legislature. To further complicate the situation, it is not at all certain that ODT will grant a permit before the applicant first obtains a state certificate; and then if ODT does not act within 60 days, the state certificate becomes void under KRS 281.190, subsec. 3.